Neal Potischman (SBN 254862)
Jonathan K. Chang (SBN 355907)
Vincent Barredo (SBN 275518)
Michael G. Mills (SBN 350938)
DAVIS POLK & WARDWELL LLP
1600 El Camino Real
Menlo Park, California 94025
Telephone: (650) 752-2000
Facsimile: (650) 752-2111
Email: neal.potischman@davispolk.com
        jonathan.chang@davispolk.com
        vincent.barredo@davispolk.com
        michael.mills@davispolk.com

Rory A. Leraris (*pro hac vice*)
Jaclyn M. Willner (*pro hac vice*)
Emily Park (*pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Email: rory.leraris@davispolk.com
        jaclyn.willner@davispolk.com
        emily.park@davispolk.com

*Attorneys for Defendants Equinix, Inc.,*
*Charles Meyers, and Keith D. Taylor*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYNE CHAN, individually and on behalf of all others similarly situated,<br><br>                              Plaintiff,<br><br>          v.<br><br>EQUINIX, INC., CHARLES MEYERS, and KEITH D. TAYLOR,<br><br>                              Defendants. | Case No. 3:24-cv-02656-VC<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT**<br><br>Date:          December 5, 2024<br>Time:          10:00 a.m.<br>Courtroom: 4<br>Before the Honorable Vince Chhabria |

# TABLE OF CONTENTS

PAGE

I.      PLAINTIFF FAILS TO ALLEGE SCHEME LIABILITY................................................1

II.     PLAINTIFF PLEADS NO ACTIONABLE STATEMENT OR
        OMISSION ...................................................................................................................1

        A.      Plaintiff Fails to State a Claim as to Equinix's Accounting ...................................1

        B.      Plaintiff Fails to State a Claim as to Equinix's Power Capacity.............................5

III.    PLAINTIFF FAILS TO PLEAD A STRONG INFERENCE OF
        SCIENTER ..................................................................................................................7

IV.     PLAINTIFF FAILS TO PLEAD LOSS CAUSATION .....................................................9

V.      CONCLUSION............................................................................................................10

# TABLE OF AUTHORITIES

PAGE

**Cases**

*Baron v. Hyrecar Inc.*,
  2022 WL 17413562 (C.D. Cal. Dec. 5, 2022) .......................................................................... 9

*Fresno Cnty Emps.' Ret. Assoc. v. comScore, Inc.*,
  268 F. Supp. 3d 526 (S.D.N.Y. 2017) ..................................................................................... 9

*Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*,
  63 F.4th 747 (9th Cir. 2023) ................................................................................................... 6

*Hurst v. Enphase Energy, Inc.*,
  2021 WL 3633837 (N.D. Cal. Aug. 17, 2021) ........................................................................ 4

*In re Alphabet, Inc. Sec. Litig.*,
  1 F.4th 687 (9th Cir. 2021) ..................................................................................................... 1

*In re Intel Corp. Sec. Litig.*,
  2019 WL 1427660 (N.D. Cal. Mar. 29, 2019).......................................................................... 2

*In re LDK Solar Sec. Litig.*,
  584 F. Supp. 2d 1230 (N.D. Cal. 2008) ................................................................................... 4

*In re QuantumScape Sec. Class Action Litig.*,
  580 F. Supp. 3d 714 (N.D. Cal. 2022)..................................................................................... 3

*In re SeeBeyond Techs. Corp. Sec. Litig.*,
  266 F. Supp. 2d 1150 (C.D. Cal. 2003) ................................................................................... 9

*In re Silver Wheaton Corp. Sec. Litig.*,
  2019 WL 1512269 (C.D. Cal. Mar. 25, 2019).......................................................................... 4

*In re VeriFone Holdings, Inc. Sec. Litig.*,
  704 F.3d 694 (9th Cir. 2012) ................................................................................................... 9

*Kang v. PayPal Holdings, Inc.*,
  620 F. Supp. 3d 884 (N.D. Cal. 2022) ..................................................................................... 1

*Kolominsky v. Root, Inc.*,
  667 F. Supp. 3d 685 (S.D. Ohio 2023) .................................................................................... 1

*Nursing Home Pension Fund, Local 144 v. Oracle Corp.*,
  380 F.3d 1226 (9th Cir. 2004) ................................................................................................. 8

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
  575 U.S. 175 (2015)................................................................................................................. 4

*Reese v. Malone*,
  747 F.3d 557, 569, 572 (9th Cir. 2014) ................................................................................... 8

*Shenwick v. Twitter, Inc.*,
  282 F. Supp. 3d 1115 (N.D. Cal. 2017) ................................................................................... 8

ii

*Zucco Partners, LLC v. Digimarc Corp.*,
  552 F.3d 981 (9th Cir. 2009) ............................................................................................... 8

## I.  PLAINTIFF FAILS TO ALLEGE SCHEME LIABILITY

Plaintiff's argument that Defendants somehow waived as to Plaintiff's scheme liability theory (Opp.[1] at 3-4) is incorrect. Defendants moved to dismiss all of Plaintiff's claims—including the sole count for violations of Section 10(b) of the Exchange Act and Rule 10b-5 (¶¶ 228-232)—on grounds of failure to plead falsity, scienter, and loss causation. (Mot. at v, 20 n.23.) According to Plaintiff, its alternative theory of scheme liability consisted of Defendants' "concealing that the Company was overselling power at its data centers and misclassifying CapEx expenses to inflate AFFO." (Opp. at 3.) But the arguments in the Motion apply directly to those very allegations. *See Kang v. PayPal Holdings, Inc.*, 620 F. Supp. 3d 884, 902 (N.D. Cal. 2022) (holding "alleged scheme consists entirely of (and fails for the same reasons as)" plaintiff's other theories, including failure to plead falsity or scienter). Plaintiff cites no authority supporting its contention that, when moving to dismiss a legal claim in its entirety, a defendant must call out by name each sub-theory within that claim. Plaintiff's reliance on *In re Alphabet, Inc. Securities Litigation* does not help it because the Ninth Circuit held that failure to refer specifically to scheme liability in an (opposition) brief did *not* effect a waiver. 1 F.4th 687, 709 (9th Cir. 2021); *see also Kolominsky v. Root, Inc.*, 667 F. Supp. 3d 685, 710 n.4 (S.D. Ohio 2023), *aff'd*, 100 F.4th 675 (6th Cir. 2024) (rejecting waiver argument where motion to dismiss "unambiguously sought dismissal of Plaintiff's Section 10(b) claims, which necessarily encompassed Plaintiff's scheme liability claim" and "presented arguments that directly pertain to the scheme liability claim").

## II.  PLAINTIFF PLEADS NO ACTIONABLE STATEMENT OR OMISSION

### A.  Plaintiff Fails to State a Claim as to Equinix's Accounting

The points vitiating Plaintiff's accounting claim remain unrebutted. (Mot. at 7-12.) Plaintiff does not contest, and therefore concedes, that AFFO is a non-GAAP metric that Equinix was free to define and calculate however it chose, so long as it disclosed its methodology, as it did here. (*Id.* at 7.) Rather, the Opposition claims that Equinix inflated AFFO by misclassifying

---

[1] Plaintiff's Opposition to the Motion is referred to herein as the "Opposition" or "Opp." Unless otherwise defined herein, capitalized terms are as defined in the Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss (the "Motion" or "Mot.").

1

CapEx items as non-recurring in violation of its own accounting descriptions "from 2015 onward, including during the Class Period." (Opp. at 8 n.10.) Yet Plaintiff asks this Court to disregard the full context of the very accounting descriptions on which Plaintiff ostensibly bases its claim. (*Id.* at 7 n.8.) In particular, the AC and the Opposition omit the Company's consistent definition from 2015 through the Class Period of non-recurring CapEx as "expenditures for expansions, transformations, [and] incremental improvements" including "electrical, mechanical and building upgrades" that "***may expand the revenues base and increase efficiency by either adding new assets or extending useful life of existing assets***." (Mot. at 4, 8-9; Opp. at 7 n.8.)[2]

The Opposition concedes that the AC's only "specific examples" of supposedly misclassified items are lifted from the Hindenburg Report. (Opp. at 7-8; Mot. at 7-8.)[3] And as explained in the Motion, Plaintiff has not pled facts demonstrating that the accounting judgments at issue in those three examples were *wrong*—i.e., that the costs described were *not* enhancements and improvements that expanded the revenue base and increased efficiency, and thus qualified as non-recurring CapEx (Mot. at 8-9). For example, contrary to Plaintiff's suggestion, the Hindenburg Report does not describe any instances of like-type, maintenance lightbulb replacements being categorized as non-recurring CapEx. (Opp. at 8.) Rather, Hindenburg describes that upgrading lightbulbs from fluorescents to LED at scale is the sort of "capital improvement" that "improve[s] overall facility efficiency" and is thus classified as non-recurring CapEx. (Mot. at 8-9; ¶ 159.) Plaintiff may disagree with that judgment but, as explained in the Motion, it is consistent with the Company's description of non-recurring CapEx. (Mot. at 8-9.) The same is true for the other classification judgments described by Hindenburg,

---

[2] Plaintiff argues, incorrectly, that taking notice of Equinix's actual description of non-recurring CapEx "inject[s] a fact dispute" into the proceedings. (Opp. at 7 n.8.) Plaintiff does not, and cannot, dispute that the Company described to investors its classification of non-recurring CapEx from 2015 throughout the Class Period in the manner identified in the Motion. (Mot. at 4.) Indeed, the Opposition concedes that this description is part of the "same policy" on which Plaintiff's accounting claim relies. (Opp. at 7 n.8.) Such additional context is critical to assessing Plaintiff's claim. *See In re Intel Corp. Sec. Litig.*, 2019 WL 1427660, at *10 (N.D. Cal. Mar. 29, 2019) ("Courts evaluate defendants' alleged false statements in the context in which they were made, specifically in regard to contemporaneous qualifying or clarifying language.").

[3] The AC does not allege when any of the purported "specific examples" actually occurred, who made the classification decision, or what the monetary significance was. (Mot. at 9 n.13.)

one of which involved the complete "overhaul" of a chiller and the other a replacement of an "entire battery system." (*Id.*)[4]

Moreover, as Plaintiff acknowledges, these purported "specific examples" of misclassifications are pulled directly from Hindenburg's interviews with anonymous former employees, for whom the AC (and Hindenburg) fails to provide even basic information such as specific job titles, dates of employment, or job responsibilities. (Mot. at 7-8; Opp. at 7-8, 13 n.13.)[5] Nor have any alleged misclassifications somehow been "corroborated" by Plaintiff or anyone else. (*See* Opp. at 11-12.) Plaintiff points to (1) analyst reports that, as explained in the Motion, discussed the discretion inherent in similar metrics across the REIT industry (*id.*; Mot. at 9-10 & n.14; ¶¶ 108, 163-164); and (2) the Company's announcement that it would report a new "redevelopment" CapEx metric applicable to aging data centers suitable for capacity and efficiency enhancement projects—an announcement that did *not* address prior reporting or "corroborate" Plaintiff's theory of prior misstatements (Opp. at 12; Mot. at 10 n.15; ¶ 172).[6]

Additionally, Plaintiff does not contest that whether an expenditure falls into the category of recurring or non-recurring CapEx involves the exercise of business *judgment*. (Mot. at 9-10.) Stating a viable claim based on those judgments is "no small task for an investor." *Omnicare,*

---

[4] One statement referenced in the Opposition—"we call it a refresh, but maintenance is probably a good word for it" (Opp. at 8)—does not suggest that the Company was misclassifying CapEx. In making that statement, Equinix's Chief Accounting Officer ("CAO") was discussing efforts to use what historically had been called "maintenance" projects to make improvements that would "create capacity for incremental revenue" and thus add to non-recurring CapEx. (¶¶ 140-142.) Plaintiff does not, and cannot, allege that what the CAO described would be inconsistent with how Equinix described its approach to expense classification.

[5] As explained in the Motion, Plaintiff cannot wholesale adopt the allegations of anonymous sources in the short-seller report without pleading facts establishing that the sources are reliable and have personal knowledge. (Mot. at 7-8.)

[6] *In re QuantumScape Securities Class Action Litigation*, 580 F. Supp. 3d 714 (N.D. Cal. 2022), on which the Opposition primarily relies, provides a stark contrast. There, the court credited a short-seller report's recitation of former employees' statements regarding the defendant's testing of new battery technology, where most of the employees used to work in "research and development" and "personally encountered" testing flaws. *Id.* at 732. Public information and multiple experts validated the former employees' allegations. *Id.* The AC offers no such corroboration and indeed does not allege that *any* of Hindenburg's anonymous former employees had personal knowledge of Equinix's accounting practices or any professional basis to disagree with them, much less the specific instances of purported misclassification. (¶¶ 157-159.)

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT- CASE NO. 3:24-cv-02656-VC

*Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 194 (2015). A plaintiff must plead facts demonstrating that the accounting decisions at issue are not merely the difference between two permissible judgments. (Mot. at 10 (citing cases).) Plaintiff falls well short: it fails to allege any "particular (and material) facts going to the basis" of Equinix's classification judgments the omission of which would make the output of those judgments "misleading to a reasonable person," as required by *Omnicare*. *Id.* at 194.

The Motion also described the well-settled principle that simply asserting that the company's accounting is wrong does not suffice to plead falsity where a company has not restated its financials. (Mot. at 11.) The authorities Plaintiff cites in the Opposition (Opp. at 9) are not to the contrary. The plaintiffs in each of those cases—unlike here—independently pleaded a plausible basis for accounting fraud. *See In re LDK Solar Sec. Litig.*, 584 F. Supp. 2d 1230, 1237-40, 1245-46 (N.D. Cal. 2008) (holding plaintiffs "otherwise met the pleading requirements of the PSLRA" based on the allegations of a named whistleblower hired by the company for the purpose of addressing the accounting issues in the case); *In re Silver Wheaton Corp. Sec. Litig.*, 2019 WL 1512269, at *5, *10 (C.D. Cal. Mar. 25, 2019) (after a government authority announced an audit of the company as part of a campaign to enforce tax laws, the company disclosed a "substantial risk" the audit would invalidate its tax position).

The Motion explained that Plaintiff's attempt to plead "Actual AFFO" involves pure speculation. (Mot. at 11.) Plaintiff admits that the cornerstone of its "Actual AFFO" allegations is an assumption that Equinix's "actual" recurring CapEx would be 5.0% of its revenue in perpetuity. (*Id.* at 4, 11; Opp. at 8-9.)  But Plaintiff ignores that Equinix made it clear to investors that the 5% estimate was for FY2014 *only* (and that it likely would be lower going forward). (Mot. at 4, 11.)[7] Plaintiff's attempt to support its arbitrary 5%-forever assumption by pointing to different, and also unsupported, assumptions by Barclays and Hindenburg (Opp. at 8-9) is insufficient in light of what Equinix actually communicated to investors about the 5% estimate. *See Hurst v. Enphase Energy, Inc.*, 2021 WL 3633837, at *4 (N.D. Cal. Aug. 17, 2021) (finding

---

[7] The suggestion that the Company accurately estimated recurring CapEx in July 2014 and then began lying about it months later in 2015 (Opp. at 8-9; ¶ 52-56) lacks any credibility.

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT- CASE NO. 3:24-cv-02656-VC

that the "PSLRA demands more" than allegations that do little more than "cherry pick financial data and present such data in a manner favorable to Plaintiff's theory").[8]

### B.      Plaintiff Fails to State a Claim as to Equinix's Power Capacity

The Opposition demonstrates precisely why Plaintiff cannot state a claim as to Equinix's purported "overselling" of power capacity. As an initial matter, the Opposition does not contest that FE1 had no knowledge of Company-wide practices or practices after mid-2022, and Plaintiff's power capacity allegations otherwise rely on anonymous witnesses in the Hindenburg Report. (Mot. at 13.) The Opposition also concedes that no overselling-related power outages are alleged to have actually occurred, whether during the Class Period or otherwise. (Opp. at 6.)

The Motion explained that Plaintiff has failed to proffer *any* actionable statement rendered misleading by Plaintiff's power capacity allegations, particularly given that the Company did not disclose the power capacity of its data centers, and repeatedly disclosed risks associated with power usage and limitations. (Mot. at 13-16 & n.20.) In response, the Opposition refers to several statements that were not rendered false or misleading in any way by the alleged "overselling" of power capacity, despite Plaintiff's insistence to the contrary. (Opp. at 4-5, 9-10.)

*First*, the Opposition refers to Mr. Meyers' October 2023 statement that Equinix's "*power utilization is actually meaningfully lower than [its] cabinet utilization*," and claims that this statement was "false" because "Defendants oversold power capacity." (Opp. at 4.) But the AC does not contain any allegation that power utilization was *not* actually lower than cabinet utilization. Instead, Plaintiff continues to conflate power *capacity* and *utilization*, and calls the Motion's explanation of the distinction between the two concepts a "factual dispute" that cannot be resolved at this stage. (Opp. at 4-5 & n.5; Mot. at 16 n.20.) But Plaintiff cannot hide from its own allegations, which quote analyst reports that recognize the difference between *utilization* and *capacity*. (*See* ¶ 138 (quoting Barclays report recognizing Mr. Meyers' discussion of power *utilization* addressed power Equinix was actually "consuming"); ¶ 165 (quoting BMO Capital Markets report explaining Equinix customers "pay for power *capacity*, but don't fully *utilize*

---

[8] By not addressing, Plaintiff has conceded that (i) violations of Regulation G and Item 10(e) of Regulation S-K cannot constitute an independent basis for liability (Mot. at 12), and (ii) the AC does not state a claim based on SOX certifications and controls statements (*Id.* at 11 n.16).

their allocation") (emphasis added).)

*Second*, the Opposition refers to Equinix's reported cabinet utilization (Opp. at 5; ¶¶ 70, 79, 91, 103, 116), which the Company described as a ratio "of cabinet space billed versus total cabinet capacity" that is used to measure how "efficiently [Equinix is] managing [its] cabinet capacity." (Mot. at 15-16.) The AC does not allege that the reported cabinet utilization metrics were inaccurate and, as explained in the Motion, Plaintiff does not plead any relationship between power capacity and Equinix's reporting of cabinet utilization that could render Equinix's cabinet utilization reporting affirmatively misleading. (*Id.*) The Opposition argues that the mere reporting of 78-82% cabinet utilization (*id.* at 16 n.20) was misleading because it somehow "conveyed to investors" that Equinix could "support growth of approximately 20%" (Opp. at 5). But Plaintiff pleads no facts indicating that Equinix could not. Moreover, Equinix disclosed that increases in customers' power usage could limit growth, even where cabinet capacity is available. (Mot. at 5.)

*Third*, the Opposition claims that Mr. Taylor's analogy comparing the way Equinix's customers pay for power to paying for a hotel room—"whether you show up and sleep in bed or not, you're still going to pay for it if you signed up"—was misleading by omission because "Defendants were taking reservations for rooms they did not have." (Opp. at 5; ¶ 119.) But Plaintiff has pleaded no facts indicating that Equinix *ever* ran out of power. (Mot. at 12.)

*Fourth*, the Opposition refers to Defendants' general statements regarding demand and growth potential, some of which touch on the adoption of AI by Equinix's customers. (Opp. at 9-10; ¶¶ 81, 87, 96, 99, 135, 146.) As the Motion explained, those statements were nonactionable general statements of corporate optimism. (Mot. at 14-15.) The Opposition does not address the Motion's points or authorities, and cursorily states that these statements were more than puffery, citing *Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747 (9th Cir. 2023). (Opp. at 10.) The challenged statements in *Glazer*, unlike those at issue here, involved "a concrete description of the past and present state of the pipeline." *Id.* at 770. And *Glazer* did not hold that responses to an analyst's question cannot be puffery, as the Opposition asserts. (Opp. at 10.)

Further, as explained in the Motion, the AC lacks any allegations that suggest these

general statements were somehow rendered false or misleading by Equinix's purported "overselling" of power capacity. (Mot. at 14-15.) The Opposition suggests that Mr. Meyers' June 2023 statement that Equinix was well-positioned to capitalize on increased demand based on AI "in our next quarter century" was some sort of admission that prior statements were false (Opp. at 2, 10 & n.11, 20; ¶ 125); but Mr. Meyers admitted nothing of the sort. In fact, there is no inconsistency between that statement and Defendants' previous statements that touched on AI. (*See, e.g.*, ¶ 87 (Equinix's customers' use of AI and how they are "architecting their networks" are "central to what we have in our funnel today and what's fueling our strong bookings"); ¶ 96 (customers' use of AI "is a key driver," among others, for the "good momentum" the Company was seeing); Opp. at 9; Mot. at 14-15.) The Opposition asserts that Mr. Meyers' statement was a corrective disclosure on the basis that Oppenheimer "downgraded Equinix" following the statement. (Opp. at 10.) But Plaintiff mischaracterizes the Oppenheimer report, which did not state that the Company changed its expectations for AI. (¶ 126.) To the contrary, Oppenheimer merely noted that investors were "hoping to hear" that "AI would mark a new growth inflection point," and downgraded Equinix because it stated that "it's still too early to forecast" the exact impact of AI and cautioned CapEx would remain high. (*Id.*) Oppenheimer's hope for more on AI does not render any prior statements false or misleading.

Plaintiff does not address, and therefore concedes, that the remaining statements that the AC challenges on the grounds of its power capacity allegations are nonactionable statements of puffery and optimism. (Mot. at 14 n.19 (citing ¶¶ 97, 107, 124, 130-133, 137, 145).)[9]

## III.    PLAINTIFF FAILS TO PLEAD A STRONG INFERENCE OF SCIENTER

The Opposition confirms that Plaintiff's scienter case is all but non-existent. Plaintiff does not dispute its inability to identify contemporaneous information—whether via internal documents, emails, or otherwise—that casts doubt on the Company's statements. (Mot. at 16;

---

[9] Plaintiff's suggestion that Defendants have acquiesced to its power capacity allegations (Opp. at 2, 11-12) is absurd. As explained in the Motion, Plaintiff's own allegation that analysts understood the practice they describe to be common in the industry undercuts Plaintiff's claim. (Mot. at 12, 15.) Plaintiff also mischaracterizes the AC in asserting that Equinix "confirmed the accuracy of the Hindenburg Report" to TD Cowen. (Opp. at 11-12.) In the excerpt of the TD Cowen report that appears in the AC (¶ 166), TD Cowen says no such thing.

7

Opp. at 14-16.) Instead, Plaintiff suggests that access to such adverse information can be "infer[red]" from the Company's general awareness of power-related metrics and AFFO. (*Id.*) But Plaintiff's own Ninth Circuit authority highlights why the AC fails to plead a plausible inference of scienter. *See Reese v. Malone*, 747 F.3d 557, 569, 572 (9th Cir. 2014) (alleging the specific contents of the company's "internal documents" that the individual defendant referenced and misrepresented in her statements); *Nursing Home Pension Fund, Local 144 v. Oracle Corp.*, 380 F.3d 1226, 1231 (9th Cir. 2004) (alleging the specific "hard numbers" in "an internal database covering global information about sales" to which top executives admitted they had access, that conflicted with public statements). Plaintiff pleads no facts remotely analogous to those that gave rise to the strong inference of scienter in either *Reese* or *Oracle*.

As for "core operations," the Opposition insists that this is a "rare circumstance[]," *Reese*, 747 F.3d at 575-76, in which the Court should assume that Defendants knew about the alleged accounting games that supposedly drove AFFO overstatement.[10] (Opp. at 16-17.) As explained in the Motion, however, Plaintiff has not alleged any facts to support executives' awareness of the minutia of accounting judgments (Mot. at 16-17) that, by Plaintiff's own allegations, amounted to less than 5% of the Company's revenue throughout the Class Period (¶ 55). *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1001 (9th Cir. 2009) (finding that details of expensed versus capitalized charges were not "prominent facts" visible to executives).

Furthermore, the Opposition does not engage with the well-established principle that a change of roles within a company is likely to be "benign" and insufficient to establish scienter. (Mot. at 17 & n.21; Opp. at 19 n.17.) Nor does the Opposition explain how it is plausible anyone at Equinix—much less Mr. Meyers or Mr. Van Camp—had advance knowledge of the Hindenburg Report. (*Id.*) *Shenwick v. Twitter, Inc.*, 282 F. Supp. 3d 1115 (N.D. Cal. 2017), which the Opposition cites (Opp. at 19 n.17), is inapposite because it concerns resignations before and after the defendant's *own* corrective disclosures. *Id.* at 1148.[11]

---

[10] The Motion explained that the "core operations" theory does not support Plaintiff's power capacity allegations (Mot. at 16-17), which Plaintiff does not address, and therefore concedes.

[11] Plaintiff acknowledges that the SOX certifications and FE1 cannot support an inference of scienter on their own and can, at most, "support[]" or "bolster" other well-pled facts. (Opp. at 15, 16 n.15, 18 n.16; Mot. at 16, 18.) Plaintiff does not allege such facts here. (Mot. at 13, 16.)

8

Plaintiff also fails to demonstrate that its motive allegations create a strong inference of scienter. (Mot. at 18.) The argument that the Company would have missed its AFFO targets if not for the misclassification of CapEx is wholly unsupported conjecture that depends on the AC's invented "Actual AFFO" figures. (Opp. at 17-18; Mot. at 11.) Plaintiff likewise does not allege anything "unusual" or "suspicious" about the individual Defendants' stock sales. (Mot. at 18; Opp. at 17-18.) Instead, the Opposition appears to cast Defendants' sales as part of an effort to artificially increase AFFO to hit incentive compensation targets. (Opp. at 18.) As discussed in the Motion and herein, that allegation does not meet the PSLRA's pleading standards, including because Plaintiff's speculative "Actual AFFO" figures are not well-pled. (Mot. at 11.)[12]

The Opposition's suggestion that there was widespread "pressure" to misclassify CapEx (Opp. at 18-19) is also not supported by the AC's allegations. Plaintiff cites *In re VeriFone Holdings, Inc. Securities Litigation*, 704 F.3d 694 (9th Cir. 2012), in which the plaintiff alleged that upon receiving specific reports about performance shortfalls for three consecutive quarters, the defendants directed "baseless adjustments to the company's financial statements" to avoid missing targets. *Id.* at 708, 710. The AC alleges nothing of the sort here. Neither the CAO's statement relied on in the Opposition and discussed *supra* note 4, which addressed the use of maintenance projects as an opportunity to increase capacity, nor the Hindenburg Report, details any management directives to make "baseless adjustments" to CapEx classifications to increase AFFO. (Opp. at 18; ¶¶ 140-142, 156.)

## IV.    PLAINTIFF FAILS TO PLEAD LOSS CAUSATION

Plaintiff concedes that to plead loss causation, it must allege that each of the ten purported "partial disclosures" revealed new information to the market or the truth of the purported misstatements. (Opp. at 19-20; Mot. at 18-19.) The Opposition confirms that Plaintiff cannot meet that standard. *First*, five of the "partial disclosures" were analyst reports based on

---

[12] Plaintiff's authorities do not stand for the position that large stock sales are alone sufficient to establish scienter. (Opp. at 17-18.) To the contrary, those cases involved stock sales that were suspiciously timed or where the company admitted misconduct. *See Fresno Cnty Emps.' Ret. Assoc. v. comScore, Inc.*, 268 F. Supp. 3d 526, 554-56 (S.D.N.Y. 2017) (finding that the company admitted to the alleged misconduct); *In re SeeBeyond Techs. Corp. Sec. Litig.*, 266 F. Supp. 2d 1150, 1168-69 (C.D. Cal. 2003) (finding that the stock sales were suspiciously timed); *Baron v. Hyrecar Inc.*, 2022 WL 17413562, at *15 (C.D. Cal. Dec. 5, 2022) (same).

9

publicly available information.  (Mot. at 19.)  While the Opposition describes the September 2022 Barclay's report as "accurately deducing . . . that Equinix was manipulating its CapEx accounting," the AC itself is clear that same report was no more than "speculat[ion]" based on "Equinix's publicly reported financial results." (Opp. at 2, 19; Mot. at 19; ¶ 108).[13]

*Second*, as stated in the Motion, Plaintiff does not adequately allege any relationship between the grab-bag of Defendants' statements characterized as partial corrective disclosures and the "truth" of alleged prior misstatements. (Mot. at 19.) The Opposition's sole "example" offered in response does not make any sense:  Plaintiff fails to explain how Mr. Meyers' June 2023 statement that AI would help drive results in coming decades revealed the "falsity" of, or could even be inconsistent with, statements he made four months *later* about power utilization being lower than cabinet utilization. (Opp. at 20; Mot. at 15-16, 19; ¶¶ 125, 136-137.)

*Third*, the Motion explained the well-settled principle that the announcement of a subpoena or investigation cannot form the basis of loss causation. (Mot. at 19.) Plaintiff does not contest that principle, but curiously responds by arguing that "an SEC investigation related to an alleged misrepresentation, coupled with a subsequent revelation of the inaccuracy of that misrepresentation," can form a basis for loss causation. (Opp. at 20.) The Opposition points to two analyst reports that recapped Equinix's public announcements of the subpoenas it received. (Opp. at 20 n.18.)  But neither of those reports reflect a "subsequent revelation" that any alleged prior statement was inaccurate, nor does the AC identify any other "subsequent revelation."

*Lastly*, while Plaintiff argues that a short-seller report can, in some circumstances, be a corrective disclosure (Opp. at 19-20), the Motion explained that the Hindenburg Report itself did not reveal anything new to the market and, in any event, Hindenburg's financial motive renders the report unsuitable to be a corrective disclosure. (Mot. at 20.)

## V.    CONCLUSION

For the foregoing reasons, and those in the Motion, Defendants request that the Court dismiss the AC.

---

[13] Plaintiff claims that "Equinix confirmed the accuracy of the Hindenburg Report in a private conversation" with TD Cowen. (Opp. at 11-12.) As discussed *supra* note 9, TD Cowen's report says no such thing.

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT- CASE NO. 3:24-cv-02656-VC

Dated:  November 19, 2024

DAVIS POLK & WARDWELL LLP

*/s/ Neal Potischman*

Neal Potischman (SBN 254862)
Jonathan K. Chang (SBN 355907)
Vincent Barredo (SBN 275518)
Michael G. Mills (SBN 350938)
DAVIS POLK & WARDWELL LLP
1600 El Camino Real
Menlo Park, California 94025
Telephone: (650) 752-2000
Facsimile:  (650) 752-2111
Email: neal.potischman@davispolk.com
         jonathan.chang@davispolk.com
         vincent.barredo@davispolk.com
         michael.mills@davispolk.com

Rory A. Leraris (*pro hac vice*)
Jaclyn M. Willner (*pro hac vice*)
Emily Park (*pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile:  (212) 701-5800
Email: rory.leraris@davispolk.com
         jaclyn.willner@davispolk.com
         emily.park@davispolk.com

*Attorneys for Defendants Equinix, Inc.,
Charles Meyers, and Keith D. Taylor*

11