Neal Potischman (SBN 254862)
Jonathan K. Chang (SBN 355907)
Vincent Barredo (SBN 275518)
Michael G. Mills (SBN 350938)
DAVIS POLK & WARDWELL LLP
900 Middlefield Road, Suite 200
Redwood City, California 94063
Telephone: (650) 752-2000
Facsimile: (650) 752-2111
Email: neal.potischman@davispolk.com
       jonathan.chang@davispolk.com
       vincent.barredo@davispolk.com
       michael.mills@davispolk.com

Rory A. Leraris (*pro hac vice*)
Jaclyn M. Willner (*pro hac vice*)
Emily Park (*pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Email: rory.leraris@davispolk.com
       jaclyn.willner@davispolk.com
       emily.park@davispolk.com

*Attorneys for Defendants Equinix, Inc.,
Charles Meyers, and Keith D. Taylor*

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| UNIFORMED SANITATIONMEN'S ASSOCIATION COMPENSATION ACCRUAL FUND, <br><br> Plaintiff, <br><br> v. <br><br> EQUINIX, INC., CHARLES MEYERS, and KEITH D. TAYLOR, <br><br> Defendants. | Case No. 3:24-cv-02656-VC <br><br> **DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION TO CERTIFY THE CLASS** <br><br> Date: July 31, 2025 <br> Time: 10:00 a.m. <br> Courtroom: 4 <br> Honorable Vince Chhabria |

# TABLE OF CONTENTS

PAGE

STATEMENT OF ISSUES ............................................................................................................... 1

PRELIMINARY STATEMENT ...................................................................................................... 1

STATEMENT OF THE CASE ......................................................................................................... 2

    A.    The Amended Complaint's Surviving Allegations.................................................. 2

    B.    Well Before the Hindenburg Report, Others Alleged that Equinix Misclassified CapEx ..... 2

    C.    Plaintiff's Purchases of Equinix Stock..................................................................... 5

LEGAL STANDARDS .................................................................................................................... 5

ARGUMENT .................................................................................................................................... 7

    A.    Plaintiff Is Subject to a Unique Defense That Will Become a Focus of the Litigation .......... 7

    B.    Plaintiff Cannot Satisfy the Typicality Requirement Because It Is Subject to a Unique Defense ................................................................................................................ 10

    C.    Plaintiff Cannot Satisfy the Adequacy Requirement Because Its Interests Are in Conflict With a Substantial Amount of the Class Who Are Not Subject to the Unique Defense..... 11

CONCLUSION............................................................................................................................... 12

# TABLE OF AUTHORITIES

PAGE

**Cases**

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) .................................................................................................. 6, 12

*Amgen Inc. v. Conn. Retirement Plan & Trust Funds*,
   568 U.S. 455 (2013) .................................................................................................... 7, 9

*Basic, Inc. v. Levinson*,
   485 U.S. 224 (1988) ......................................................................................................... 7

*Berman v. Freedom Fin. Network, LLC*,
   400 F. Supp. 3d 964 (N.D. Cal. 2019) ....................................................................... 10, 11

*Crawford v. Honig*,
   37 F.3d 485 (9th Cir. 1994) ............................................................................................. 6

*DZ Reserve v. Meta Platforms, Inc.*,
   96 F.4th 1223 (9th Cir. 2024) .......................................................................................... 8

*Ellis v. Costco Wholesale Corp.*,
   657 F.3d 970 (9th Cir. 2011) ........................................................................................... 6

*Gen. Tel. Co. of Sw. v. Falcon*,
   457 U.S. 147 (1982) ......................................................................................................... 6

*Gordon v. Sonar Cap. Mgmt. LLC*,
   92 F. Supp. 3d 193 (S.D.N.Y. 2015) .............................................................................. 11

*Halliburton Co. v. Erica P. John Fund, Inc.*,
   573 U.S. 268 (2014) ..................................................................................................... 7, 9

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ......................................................................................... 6

*Hanon v. Dataproducts Corp.*,
   976 F.2d 497 (9th Cir. 1992) ................................................................................. 6, 8, 10

*In re BofI Holdings, Inc. Sec. Litig.*
   977 F.3d 781 (9th Cir. 2020) ......................................................................................... 10

*In re Manulife Fin. Corp. Sec. Litig.*,
   276 F.R.D. 87 (S.D.N.Y. 2011) ..................................................................................... 10

*In re Valence Tech. Sec. Litig.*,
   1996 WL 119468 (N.D. Cal. Mar. 14, 1996) ........................................................... 11, 12

*Jimenez v. Haxton Masonry, Inc.*,
   2021 WL 1041608 (N.D. Cal. Feb. 11, 2021) ................................................................. 6

*Kim v. Allison*,
   87 F.4th 994 (9th Cir. 2023) .................................................................................... 11, 12

*Matrixx Initiatives, Inc. v. Siracusano*,
  563 U.S. 27 (2011) .................................................................................................................... 7

*Mays v. Wal-Mart Stores, Inc.*,
  804 F. App'x 641 (9th Cir. 2020) .............................................................................................. 6

*Sali v. Corona Reg'l Med. Ctr.*,
  909 F.3d 996 (9th Cir. 2018) ..................................................................................................... 6

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ......................................................................................................... 5, 6, 9

*Wang v. Chinese Daily News, Inc.*,
  737 F.3d 538 (9th Cir. 2013) ..................................................................................................... 5

**Statutes & Rules**

Fed. R. Civ. P. 23 .............................................................................................................................. 6

# STATEMENT OF ISSUES[1]

1. Whether Lead Plaintiff Uniform Sanitationmen's Association Compensation Accrual Fund ("Plaintiff") is subject to a unique defense, rendering Plaintiff unable to satisfy Rule 23(a)(3)'s typicality requirement.

2. Whether Plaintiff's interests are in conflict with the putative class, rendering Plaintiff unable to satisfy Rule 23(a)(4)'s adequacy requirement.

3. Whether Plaintiff's motion to certify a class and be appointed class representative should be denied for failing to satisfy Rule 23(a)(3) and/or 23(a)(4).

# PRELIMINARY STATEMENT

As is common in securities litigation, Plaintiff's motion for class certification invokes the fraud on the market presumption of reliance. What is uncommon is that Plaintiff itself bears a real risk of being unable to invoke that presumption on its own behalf. That is because *all* of Plaintiff's purchases of Equinix stock came toward the end of the proposed Class Period, and well after other investors publicly alleged that Equinix misclassified recurring capital expenditures as non-recurring, boosting its financial results. These claims were presented publicly in 2022 and 2023 by a prominent short seller, Jim Chanos, and a prominent investment bank, Barclays. Because all of Plaintiff's purchases occurred *after* those disclosures, and Plaintiff even increased its stake in Equinix days after Hindenburg Research ("Hindenburg") published its short-seller report on March 20, 2024, Plaintiff will face substantial obstacles in relying on the fraud on the market presumption of reliance. And if the Court appoints Plaintiff as the class representative, this topic is all but certain to become a focus of this litigation, putting Plaintiff's interests at odds with members of the putative class who purchased before Chanos or Barclays made their allegations (and who did not purchase after Hindenburg issued its report). As a result of the foregoing, Plaintiff cannot satisfy Rule 23's typicality or adequacy requirements, and the Court should deny Plaintiff's motion.

---

[1] Unless otherwise defined herein, all capitalized words have the meaning attributed to them in Plaintiff's Motion to Certify Class, Appoint Class Representative and Appoint Class Counsel (the "Motion for Class Cert.").

1

# STATEMENT OF THE CASE

## A. The Amended Complaint's Surviving Allegations

Following this Court's decision granting in part and denying in part Defendants' motion to dismiss, this case centers around one claim: that Defendants allegedly manipulated Equinix's Adjusted Funds from Operations ("AFFO") metric by intentionally misclassifying recurring capital expenditures ("CapEx") (which reduces AFFO) as non-recurring CapEx (which does not impact AFFO). (*See* ECF No. 67 (Jan. 6, 2015 Order re Motion to Dismiss (the "MTD Order")) at 2.)

In its Amended Complaint, Plaintiff alleges the so-called "truth" was revealed on March 20, 2024, when Hindenburg released a short-seller report (the "Hindenburg Report"). *See id.* at 3. As it relates to the remaining claim in this case, the Amended Complaint alleges that the Hindenburg Report revealed in March 2024 that Equinix manipulated AFFO by improperly categorizing recurring CapEx as non-recurring CapEx, in particular in connection with the replacement of chillers (industrial air conditioners), batteries and light bulbs. (¶¶[2] 155, 157–59.)

## B. Well Before the Hindenburg Report, Others Alleged that Equinix Misclassified CapEx

At least as early as 2022, analysts, other short sellers and media publicized allegations that Equinix and other data center companies had misclassified CapEx and understated recurring CapEx, boosting reported AFFO.[3]

On June 29, 2022, the *Financial Times* reported that Jim Chanos (whom *Institutional Investor* magazine crowned as "arguably the most well-known short seller in the world"[4]) was raising "several hundred million dollars" for a fund in connection with his "big short right now" of the data center industry, including Equinix.[5] (Ex. 2 at 1 (June 29, 2022 Financial Times Article,

---

[2] ¶ refers to the corresponding paragraph in the Amended Complaint (ECF No. 43).

[3] As related to Equinix, these allegations are deeply flawed on the merits in various respects. But for purposes of the instant motion, those errors are not relevant.

[4] Ex. 1 at 1. "Ex." refers to the exhibits attached to the supporting Declaration of Jonathan K. Chang.

[5] A slide deck ███████████████████████████████████████████ which was produced by Hindenburg in this litigation ████████████████████████████████

(….continued)

2

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO CERTIFY THE CLASS – CASE NO. 3-24-CV-02656-VC

entitled "Hedge Fund Manager Jim Chanos's Next 'Big Short' is Data Centres").) That same day, CNBC published an article reporting that Chanos's "'big short' right now" was data center operators including Equinix, and that Equinix stock closed down "nearly 3%" after the *Financial Times* published its interview with Chanos describing his short. (Ex. 4 at 1.) On July 28, 2022, *Benzinga* published an article reporting that Equinix's then-CEO, Charles Meyers, stated, in response to an analyst's question regarding Chanos's short thesis, that the "short thesis . . . represents an underdeveloped understanding of the data center market and the relative position of various players." (Ex. 5 at 4.) *Benzinga* also reported that in response, Chanos accused Equinix on Twitter of making up its results: "When you make up the metrics, you can make up the numbers." (*Id.* at 3.) On August 1, 2022, an industry publication, *Data Center Dynamics*, picked up on the same Tweet and noted that the "Chanos-linked Twitter account Diogene (@WallStCynic), accused Equinix of 'living in an alternative universe' regarding its return on investment numbers." (Ex. 6 at 1.)[6]

On September 6, 2022, *Bloomberg* published an article reporting on Chanos's short thesis. (Ex. 11.) Opining that Chanos's short thesis was a "credible challenge" to Equinix (and its largest competitor Digital Realty Trust Inc. ("Digital Realty" or "DLR")), the *Bloomberg* columnist explained that "maintenance" CapEx—"spending the companies say is required to sustain revenue



Defendants have served discovery seeking more information about the deck. (Chang Decl. ¶ 6.)

[6] Chanos & Co. identified the Twitter handle @WallStCynic as its social media account in the firm's SEC Form ADV, and media has reported that the Twitter handle was, in fact, Chanos's. (Chang Decl. ¶¶ 10–11, Exs. 7–10.)

3

as opposed to win business"—is an "opaque metric" because it is not defined by any accounting standards, and "may have to rise" in view of costs and rental rates affecting the data center industry.[7]  (*Id* at 2, 4.)

On September 23, 2022, Barclays issued a report entitled, "Mounting Risks: Downgrading EQIX to Equal Weight and DLR to Underweight," which identified "Recurring vs. non-recurring capex" as "Accounting issue #1" for both Equinix and Digital Realty.  (Ex. 12 at 5–6.)  Nodding to broader discourse on the topic, the Barclays report noted that "[i]nvestor attention has recently focused on earnings quality, and specifically how maintenance and growth capex are allocated."  (*Id.* at 6.)  Barclays opined that:

> As AFFO is a non-GAAP number, our sense is management teams have a fair amount of discretion in how the spending is characterized.  This is particularly relevant because REITs deduct maintenance capex from FFO when calculating AFFO, but not growth capex. (EQIX specifically uses the labels "recurring vs. non-recurring" capex, instead of "maintenance vs. growth" but we see no material difference in the definitions).  In the three years prior to becoming a REIT (2012-2014), EQIX's recurring capex averaged 8.7% of revenue (during this period EQIX used the term "ongoing" capex, but again no material difference in definition).

(*Id.*)  Comparing Equinix's reported 15% growth rate for new cabinets and reported 29% growth rate for non-recurring capex, Barclays alleged that "some non-recurring growth capex would be better classified as recurring" and that they did "not see a plausible reason why [Equinix's] capex accounting changed after 2014, other than to reflect higher AFFO."  (*Id.*)  Barclays further stated that using Equinix's "recurring capex as a percentage of revenue based on the pre-REIT 2013-2015 average of 8.7% reduces AFFO [per share] by an average of 15% in each year."  (*Id.*)

On December 16, 2022, the *Wall Street Journal* published an article that identified Chanos's "criticism" that data center REITs "overstate returns by classifying some maintenance spending as being for growth—a complicated point that the data centers refute."  (Ex. 13 at 3.)  On or about March 28, 2023, Chanos elaborated on this allegation while appearing on a podcast that was published on Apple, Spotify, YouTube and other platforms entitled "Jim Chanos: A Short Thesis on Data Centers."  (Ex. 14 (Declaration of Patrick W. O'Shaughnessy) ¶ 4; *see generally* Ex. 15 at

---

[7] The Amended Complaint does not refer to Mr. Chanos's allegations or short thesis, or corresponding press coverage of them.  Accordingly, they were not at issue in connection with Defendants' Motion to Dismiss.

4-17 (certified transcript of podcast).) During that podcast, Chanos had an extended colloquy with the host about reported CapEx at both Equinix and Digital Realty, and he explained that "an insider a year or so ago" explained to him that data centers kept their "maintenance CapEx number[s]" artificially low by classifying replacement of items like "air conditioning" (e.g., chillers) as "growth CapEx" by claiming that the replacement could "bring in one new tenant or [the data center will] be able to raise rents on any kind of meaningful number of existing tenants." (Ex. 14 at 8; Ex. 15 at 13.) Chanos concluded, "[s]o even though the HVAC has to be replaced, no matter what, it's now considered growth CapEx because it will add to the economics of the data center"—a decision he characterized as "absurd." (*Id.*)

### C. Plaintiff's Purchases of Equinix Stock

Plaintiff has proposed a Class Period commencing on May 3, 2019 and ending on March 24, 2024. But Plaintiff did not acquire any Equinix stock during the first four years of the proposed Class Period. Rather, Plaintiff acquired its Equinix stock on July 20 and 21, 2023, August 17, 2023, December 5, 2023, and March 25, 2024. (*See* ECF No. 20-2 at 3; Ex. 17 (Plaintiff's Equinix stock transactions produced by Plaintiff's investment advisor[8]).) In other words, *all* of Plaintiff's purchases occurred after the press reported on the Chanos short thesis, after Barclays published the above-referenced analyst report, and after the Chanos podcast. Moreover, Plaintiff more than doubled its Equinix position on March 25, 2024, days after Hindenburg published its report.

## LEGAL STANDARDS

A party seeking class certification must satisfy the four requirements of Rule 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. The typicality and adequacy elements are the subject of this opposition.[9] "Class certification is proper only if the trial court has concluded, after a 'rigorous analysis,' that Rule 23(a) has been satisfied." *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 542–43 (9th Cir. 2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011)). More than setting forth a "mere pleading standard[,] [a]

---

[8] Although not germane to the instant motion, Plaintiff delegated authority to make investments to its investment advisor, Columbia Threadneedle Investments.

[9] Defendants are not challenging the other elements of class certification under Rule 23 at this time.

party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Dukes*, 564 U.S. at 350 (emphasis in original). The district court "must conduct a rigorous analysis to determine whether the party seeking certification has met the prerequisites of Rule 23" before certifying a class and should not uncritically accept the plaintiff's preferred inferences. *Mays v. Wal-Mart Stores, Inc.*, 804 F. App'x 641, 642 (9th Cir. 2020) (quoting *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1004 (9th Cir. 2018)).

With respect to typicality, Plaintiff must demonstrate that the named plaintiff's claims are typical of those of the proposed class. Fed. R. Civ. P. 23(a)(3). Representative claims are "typical" if they are "reasonably co-extensive with those of absent class members." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998), *overruled on other grounds by Dukes*, 564 U.S. at 338. However, class certification should be denied if there is a "danger that absent class members will suffer if their representative is preoccupied with defenses unique to it." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).

As for adequacy, Rule 23(a)(4) only permits certification if the proposed class representative can demonstrate that they will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In assessing the adequacy of a proposed class representative, courts examine, *inter alia*, whether there is "an absence of antagonism, [and] a sharing of interests between representatives and absentees." *Jimenez v. Haxton Masonry, Inc.*, 2021 WL 1041608, at *11 (N.D. Cal. Feb. 11, 2021) (citing *Crawford v. Honig*, 37 F.3d 485, 487 (9th Cir. 1994)). The Supreme Court has "repeatedly held that a class representative must be a part of the class and possess the same interest and suffer the same injury as the class members." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982) (citations omitted); *see Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997) ("The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent.").

# ARGUMENT

Plaintiff is subject to a unique defense related to the timing of its stock purchases—*all* following the disclosures summarized above—which prevent it from meeting Rule 23's requirements that its claims be typical of members of the proposed class and that it be adequate to serve as the proposed class's representative. *See Amgen Inc. v. Conn. Retirement Plan & Trust Funds*, 568 U.S. 455, 472 (2013) (in the class certification context, whether a putative class representative traded between the time of the misrepresentation and the time the truth was revealed "relates primarily to the Rule 23(a)(3) and (a)(4) inquiries into typicality and adequacy of representation"). That defense and its impacts on typicality and adequacy are addressed in turn below.

### A. Plaintiff Is Subject to a Unique Defense That Will Become a Focus of the Litigation

To prevail on its claim for violations of Section 10(b) of the Securities Exchange Act and Rule 10b-5, Plaintiff (along with other members of the putative class) must demonstrate, among other things, reliance upon an alleged misrepresentation or omission. *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37-38 (2011). In its motion, Plaintiff makes clear that it intends to rely on the fraud on the market presumption set forth in *Basic, Inc. v. Levinson*, 485 U.S. 224 (1988), to satisfy the reliance element. (Motion for Class Cert. at 12.) To invoke the fraud on the market presumption of reliance, a plaintiff in turn must prove that "(1) the alleged misrepresentations were publicly known, (2) they were material, (3) the stock traded in an efficient market, and (4) the plaintiff traded the stock *between when the misrepresentations were made and when the truth was revealed*." *Halliburton Co. v. Erica P. John Fund, Inc.* (*Halliburton II*), 573 U.S. 268, 277-78 (2014) (emphasis added). The presumption is based upon the efficient market hypothesis, which posits that all material information concerning an issuer is incorporated immediately into its stock price and therefore "the market price of shares will reflect all publicly available information." *Amgen*, 568 U.S. at 461 (cleaned up).

The last element under *Halliburton II*—whether Plaintiff purchased Equinix stock *after* the truth was revealed—will be at issue in this case.[10] For purposes of this motion, there is no dispute that "the market for Equinix common stock was efficient during the Class Period" (Motion for Class Cert. at 13) or that Plaintiff's first purchase of Equinix stock did not occur until July 20, 2023—nine months before the end of the proposed class period, and well *after* Jim Chanos, the press, and Barclays challenged Equinix's CapEx classification decisions and their impact on AFFO. The significance of this issue is plain from the Amended Complaint's allegations, which contends that the Hindenburg Report supposedly "revealed" that Equinix "had been manipulating AFFO by improperly classifying recurring CapEx as non-recurring CapEx" including by "mis-categoriz[ing] . . . two of the Company's largest maintenance expenses: chillers [large air conditioners] and batteries." (¶ 19.) But Chanos and Barclays already made these allegations, and they did so prior to when Plaintiff made its investments, as summarized above. *See supra* at 2–5. For example:

- *Benzinga* published an article in July 2022 referring to Chanos's short thesis and Equinix's financial results, reporting that Chanos accused Equinix on Twitter of making up numbers, including based on its reported CapEx: "When you make up the metrics, you can make up the numbers." (Ex. 5 at 3.) Days later, *Data Center Dynamics* highlighted the same Tweet. (Ex. 6 at 1.)

- Barclays claimed in September 2022 that "some non-recurring growth capex would be better classified as recurring," alleged the only "plausible reason why capex accounting changed after 2014" (when Equinix became a REIT) was to "reflect higher AFFO," and estimated that Equinix overreported AFFO by an average of 15% each year as a result of the alleged misclassification. (Ex. 12 at 6.)

- Then, in the March 2023 podcast, when addressing reported CapEx levels at Equinix and Digital Realty, Chanos specifically claimed that he learned from an "insider" that HVAC cooling systems that "ha[d] to be replaced, no matter what" were being classified as

---

[10] Deciding whether Plaintiff meets the requirements to serve as a typical and adequate class representative does not require the Court to determine now whether Plaintiff or other class members ultimately may avail themselves of the *Basic* presumption of reliance on the merits. *See Hanon*, 976 F.2d at 509 (court was "at liberty to consider evidence which goes to the requirements of Rule 23 even though the evidence may also relate to the underlying merits of the case"); *cf. DZ Reserve v. Meta Platforms, Inc.*, 96 F.4th 1223, 1239 (9th Cir. 2024) (reliance is appropriately established at the merits stage).

"growth CapEx, because it will add to the economics of the data center." (Ex. 14 at 8; Ex. 15 at 13.)[11]

Based on the efficient market hypothesis—upon which Plaintiff ultimately will depend to establish reliance, *see Halliburton II*, 573 U.S. at 277-78—the price that Plaintiff paid for its Equinix shares already incorporated the allegations leveled by Chanos and Barclays and repeated in various other publications. That is, the price at which Plaintiff purchased 100% of its Equinix holdings already reflected the core allegations of supposed fraud regarding CapEx classification and its impact on AFFO. *See Amgen*, 568 U.S. at 462 ("If a market is generally efficient in incorporating publicly available information into a security's market price, it is reasonable to presume that a particular public, material misrepresentation will be reflected in the security's price."). As the *Amgen* Court explained:

> A security's market price cannot be affected by a misrepresentation not yet made, and in an efficient market, a misrepresentation's impact on market price is quickly nullified once the truth comes to light. Thus, a plaintiff whose relevant transactions were not executed between the time the misrepresentation was made and the time the truth was revealed cannot be said to have indirectly relied on the misrepresentation through its reliance on the integrity of the market price.

*Id.* at 472.

In its Amended Complaint, Plaintiff alleges that the Barclays allegations were only partial corrective disclosures, an argument that the Court accepted for purposes of its motion to dismiss ruling regarding loss causation. (*See* MTD Order at 10.) But allegations in a complaint do not suffice to establish the elements of class certification, *see Dukes*, 564 U.S. at 350 (plaintiff must "prove" the elements of class certification; allegations in pleadings are insufficient), nor has the Court had any occasion to consider the interplay between Barclays' allegations and Chanos's, the latter of which do not appear in the Amended Complaint.[12]

---

[11] The ███████████████ deck produced by Hindenburg ████████████████████████████████████ *See supra* note 3; Ex. 3 at 11.

[12] The parties are engaged in active discovery concerning Chanos's short thesis including the timing and nature of the thesis being disseminated publicly. (*See* Chang Decl. ¶ 6.)

Although the Court need not reach the issue today, even based on the current record Plaintiff will face enormous challenges on the merits seeking to establish that any incremental (….continued)

9

Therefore, to the extent the Court or finder of fact ultimately determines that the alleged "truth"—i.e., that Equinix classified recurring CapEx as non-recurring CapEx purportedly in order to boost its AFFO and AFFO per share (the core of Plaintiff's remaining claim)—was revealed prior to Plaintiff's initial purchase of Equinix stock in July 2023, Plaintiff would not be entitled to invoke the fraud on the market presumption of reliance. And if the Court were to grant Plaintiff's motion, Plaintiff's ability to invoke the *Basic* presumption as to its own purchases predictably will become a focus of the litigation.

### B. Plaintiff Cannot Satisfy the Typicality Requirement Because It Is Subject to a Unique Defense

Because Plaintiff's ability to invoke the *Basic* presumption is uncertain (at best), it cannot satisfy the typicality requirement. *See Hanon*, 976 F.2d at 508 (named plaintiff not typical if "there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it." (internal citation omitted)). Where, as here, there is a "'danger that absent class members will suffer if their representative is preoccupied' with their own unique defenses, class certification should not be granted." *Berman v. Freedom Fin. Network, LLC*, 400 F. Supp. 3d 964, 984-85 (N.D. Cal. 2019).

As explained above, the issue of whether Plaintiff purchased Equinix stock at a time when the alleged truth was already known to the market will become a focus of the litigation. For investors who purchased before information regarding Chanos's short thesis and the Barclays report entered the market, this defense to the *Basic* presumption of reliance may be irrelevant. But *Plaintiff*—who purchased *all* of its Equinix stock after relevant disclosures—would be required to

---

information provided in the Hindenburg Report would have been material to investors, in light of Chanos and Barclays having clearly alleged that Equinix misclassified maintenance expenses and non-recurring CapEx,. *See In re Bofl Holdings, Inc. Sec. Litig.*, 977 F.3d 781, 794 (9th Cir. 2020) ("A corrective disclosure, though, must by definition reveal new information to the market that has not yet been incorporated into the price."); *In re Manulife Fin. Corp. Sec. Litig.*, 276 F.R.D. 87, 104 (S.D.N.Y. 2011) (rejecting an alleged corrective disclosure because it "d[id] not allege that any new material information was revealed"). Indeed, Wells Fargo described Hindenburg's allegations concerning misclassification of CapEx as a "case [that] has been made many times before, dating to Highfield's short piece on DLR (and more recently by Jim Chanos)" (Ex. 16 at 1), and TD Cowen issued an analyst report describing the Hindenburg Report as the "Same Short Thesis, Different Author," and noted that Hindenburg was "largely a re-hashing of a short thesis published in 2022" (*see* Ex. 18 at 1).

devote attention and resources to this issue, and will be burdened by trading records that, at a minimum, may give rise to very different inferences than would apply to an investor who purchased Equinix common stock before the Chanos and Barclays disclosures (and, similarly, did not purchase Equinix stock days after the Hindenburg Report was published). Plaintiff therefore does not satisfy Rule 23(a)(3)'s typicality requirement. *See In re Valence Tech. Sec. Litig.*, 1996 WL 119468, at *5 (N.D. Cal. Mar. 14, 1996) (holding proposed class representatives who purchased after the first alleged corrective disclosure in May 1994 "not typical of the class" because their "interest in the materiality of the May 3, 1994 adverse disclosure is in conflict with the interests of pre-May 1994-only purchasers"); *cf. Berman*, 400 F. Supp. 3d at 986-88 (denying class certification, even though Plaintiff's claims "ar[o]se from the same course of conduct" and were "based on the same legal theories" as the proposed class, because an affirmative defense threatened to overwhelm other issues in the litigation); *Gordon v. Sonar Cap. Mgmt. LLC*, 92 F. Supp. 3d 193, 205 (S.D.N.Y. 2015) (finding that lead plaintiff was atypical when a unique defense was of "only secondary importance" for most class members and there were "more pressing issue[s]" for those who were not subject to the unique defense).

### C. Plaintiff Cannot Satisfy the Adequacy Requirement Because Its Interests Are in Conflict With a Substantial Amount of the Class Who Are Not Subject to the Unique Defense

Where, as here, a proposed class representative's interests are in conflict with other class members, class certification should be denied. *See Kim v. Allison*, 87 F.4th 994, 1000 (9th Cir. 2023) (class certification is denied where conflicts are "fundamental" and "go to the heart of the litigation").

Because Plaintiff likely will be unable to invoke the *Basic* presumption of reliance, there is a conflict between Plaintiff's interests and the interests of a substantial portion of the putative class. Plaintiff's ability to invoke the *Basic* presumption is dependent on it establishing that the Hindenburg Report included new, material information that did not become known to the market earlier in the proposed class period. Plaintiff could have framed its Amended Complaint with a proposed class period that ended with the Chanos and Barclays-related disclosures. It had a

1  significant financial interest not to do so, however. To the contrary, Plaintiff has a strong incentive
2  to try to minimize the import of the allegations that Chanos and Barclays made, and which the
3  financial press covered, so as to treat the Hindenburg Report as the pivotal corrective disclosure.
4  *See In re Valence Tech. Sec. Litig.*, 1996 WL 119468, at *5 (holding interests of plaintiffs that
5  purchased after the first alleged corrective disclosure "is in conflict with the interests" of investors
6  who only purchased prior to that disclosure).

7  This conflict can be expected to manifest itself in connection with expert discovery,
8  summary judgment, and any trial. Plaintiff would be entitled to *no* recovery if the Court were to
9  find that the "truth was revealed" to the market before Plaintiff began investing in Equinix stock on
10 July 24, 2023, absent proof of actual reliance. Plaintiff will likely be unable to make such a
11 showing, particularly given its purchase of substantial Equinix stock five days *after* the Hindenburg
12 Report was released. While Plaintiff no doubt will argue that it will present evidence regarding
13 alleged price inflation throughout the entire proposed class period, Plaintiff will have an obvious
14 incentive to argue that inflation was as high as possible in the period when it made its purchases.
15 Given the narrow window of those purchases (occurring in the last nine months of a nearly five-
16 year class period), this places Plaintiff in conflict with many members of the putative class who
17 purchased prior to Chanos's and Barclays's allegations. As a result, Plaintiff cannot satisfy Rule
18 23(a)(4)'s adequacy requirement. *Cf. Kim*, 87 F.4th at 1002, (finding that just 5% of the class being
19 subject to a conflict of interest with the putative class representative constituted "a sizeable number
20 of potential class members," rendering lead plaintiff inadequate); *see also Amchem*, 521 U.S. at
21 626-27 (holding class representatives already injured by asbestos exposure inadequate to represent
22 class because their interests conflict with class members who had been exposed but not yet
23 developed symptoms).

## CONCLUSION

25 For the reasons stated above, the Court should deny Plaintiff's motion to certify this action
26 as a class action and appoint Plaintiff as class representative.

| | |
|---|---|
| Dated: May 29, 2025 | DAVIS POLK & WARDWELL LLP |
| | |
| | */s/ Rory A. Leraris* |
| | Neal Potischman (SBN 254862) |
| | Jonathan K. Chang (SBN 355907) |
| | Vincent Barredo (SBN 275518) |
| | Michael G. Mills (SBN 350938) |
| | DAVIS POLK & WARDWELL LLP |
| | 900 Middlefield Road, Suite 200 |
| | Redwood City, California 94063 |
| | Telephone: (650) 752-2000 |
| | Facsimile: (650) 752-2111 |
| | Email: neal.potischman@davispolk.com |
| | jonathan.chang@davispolk.com |
| | vincent.barredo@davispolk.com |
| | michael.mills@davispolk.com |
| | |
| | Rory A. Leraris (*pro hac vice*) |
| | Jaclyn M. Willner (*pro hac vice*) |
| | Emily Park (*pro hac vice*) |
| | DAVIS POLK & WARDWELL LLP |
| | 450 Lexington Avenue |
| | New York, New York 10017 |
| | Telephone: (212) 450-4000 |
| | Facsimile: (212) 701-5800 |
| | Email: rory.leraris@davispolk.com |
| | jaclyn.willner@davispolk.com |
| | emily.park@davispolk.com |
| | |
| | *Attorneys for Defendants Equinix, Inc., Charles Meyers, and Keith D. Taylor* |