ROBBINS GELLER RUDMAN
  & DOWD LLP
SHAWN A. WILLIAMS (213113)
DANIEL J. PFEFFERBAUM (248631)
HADIYA K. DESHMUKH (328118)
HAILEY S. ZANUTTO (358143)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: 415/288-4545
shawnw@rgrdlaw.com
dpfefferbaum@rgrdlaw.com
hdeshmukh@rgrdlaw.com
hzanutto@rgrdlaw.com

Lead Counsel for Lead Plaintiff

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNIFORMED SANITATIONMEN'S ASSOCIATION COMPENSATION ACCRUAL FUND,<br><br>                          Plaintiff,<br><br>        vs.<br><br>EQUINIX, INC., et al.,<br><br>                          Defendants. | Case No. 3:24-cv-02656-VC<br><br>CLASS ACTION<br><br>LEAD PLAINTIFF'S NOTICE OF UNOPPOSED MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF<br><br>DATE:        September 4, 2025<br>TIME:        2:00 p.m. (via Zoom)<br>JUDGE:      Honorable Vince Chhabria<br>CTRM:      4, 17th Floor |

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ...........................................................................................................1

II.     OVERVIEW OF THE LITIGATION .........................................................................2

III.    THE SETTLEMENT TERMS......................................................................................3

IV.     THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL...........5

        A.      Lead Plaintiff and its Counsel Have Adequately Represented the Class................6

        B.      The Proposed Settlement Is the Result of Good Faith, Arm's-Length
                Negotiations by Informed, Experienced Counsel Who Were Aware of the
                Risks of the Action................................................................................................7

        C.      The Relief Provided to the Class Is Adequate .......................................................8

                1.      The Substantial Benefits for the Class, Weighed Against the Costs,
                        Risks, and Delay of Further Litigation, Support Preliminary
                        Approval ...............................................................................................8

                2.      The Proposed Method for Distributing Relief Is Effective......................11

                3.      Attorneys' Fees ......................................................................................11

                4.      Other Agreements Made In Connection With the Resolution of the
                        Case.......................................................................................................12

                5.      The Proposed Plan of Allocation Is Designed to Treat Class
                        Members Equitably..................................................................................12

        D.      The Remaining Ninth Circuit Factors Are Satisfied.............................................14

                1.      Risk of Maintaining Class Action Status Through Trial ..........................14

                2.      Experience and Views of Counsel ...........................................................14

V.      CERTIFICATION OF THE CLASS FOR PURPOSES OF THE SETTLEMENT
        IS APPROPRIATE .......................................................................................................15

        A.      The Requirements of Rule 23(a) Are Met .............................................................15

                1.      Numerosity Is Satisfied...........................................................................15

                2.      Commonality Is Satisfied........................................................................16

                3.      Typicality Is Satisfied .............................................................................17

                4.      Lead Plaintiff and Lead Counsel Are Adequate .......................................18

        B.      The Requirements of Rule 23(b)(3) Are Also Met................................................19

**Page**

VI.    THE PROPOSED FORMS AND METHOD OF PROVIDING NOTICE TO THE
       CLASS ARE APPROPRIATE AND SATISFY FEDERAL RULE OF CIVIL
       PROCEDURE 23, THE PSLRA, AND DUE PROCESS .................................................20

VII.   NORTHERN DISTRICT OF CALIFORNIA PROCEDURAL GUIDANCE ..................22

VIII.  CONCLUSION .............................................................................................................22

# TABLE OF AUTHORITIES

Page

**CASES**

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)...............................................................15, 19

*Borteanu v. Nikola Corp.*,
  348 F.R.D. 239 (D. Ariz. 2025) ...............................................16

*Ciuffitelli v. Deloitte & Touche LLP*,
  2019 WL 1441634 (D. Or. Mar. 19, 2019).............................13

*Davy v. Paragon Coin, Inc.*,
  2020 WL 4460446 (N.D. Cal. June 24, 2020) ........................16

*Fleming v. Impax Lab'ys.*,
  2021 WL 5447008 (N.D. Cal. Nov. 22, 2021) ...............16, 17, 18, 19

*Fleming v. Impax Lab'ys Inc.*,
  2022 WL 2789496 (N.D. Cal. July 15, 2022)..........................14

*Ford v. CEC Ent, Inc.*,
  2015 WL 11439032 (S.D. Cal. July 7, 2015) ..........................19

*Franklin v. Kaypro Corp.*,
  884 F.2d 1222 (9th Cir. 1989) ...................................................5

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ........................................ *passim*

*Hanon v. Dataproducts Corp.*,
  976 F.2d 497 (9th Cir. 1992) ...................................................17

*Hatamian v. Advanced Micro Devices, Inc.*,
  2016 WL 1042502 (N.D. Cal. Mar. 16, 2016)...................15, 19

*Hayden v. Portola Pharms. Inc.*,
  2023 WL 2375242 (N.D. Cal. Mar. 6, 2023)...........................12

*Hayes v. Magnachip Semiconductor Corp.*,
  2016 WL 7406418 (N.D. Cal. Dec. 22, 2016)..........................16

*Hefler v. Wells Fargo & Co.*,
  2018 WL 6619983 (N.D. Cal. Dec. 18, 2018),
  *aff'd sub nom., Hefler v. Pekoc*,
  802 F. App'x 285 (9th Cir. 2020) ...........................7, 8, 10, 12

Page

*Hesse v. Sprint Corp.*,
598 F.3d 581 (9th Cir. 2010),
*aff'd sub nom.*, *Akins v. Facebook, Inc.*,
2025 WL 484621 (9th Cir. Feb. 13, 2025) ............................................................5

*In re Apple Inc. Sec. Litig.*,
2024 WL 3297079 (N.D. Cal. June 3, 2024) .......................................................10

*In re Celera Corp. Sec. Litig.*,
2015 WL 1482303 (N.D. Cal. Mar. 31, 2015) .......................................................9

*In re Cooper Cos. Inc. Sec. Litig.*,
254 F.R.D. 628 (C.D. Cal. 2009) ...................................................................16, 19

*In re Facebook, Inc. Consumer Priv. User Profile Litig.*,
2023 WL 8443230 (N.D. Cal. Oct. 10, 2023) .......................................................5

*In re Hyundai & Kia Fuel Econ. Litig.*,
926 F.3d 539 (9th Cir. 2019) .........................................................................5, 20

*In re Intuitive Surgical Sec. Litig.*,
2016 WL 7425926 (N.D. Cal. Dec. 22, 2016) .....................................................17

*In re Juniper Networks, Inc. Sec. Litig.*,
264 F.R.D. 584 (N.D. Cal. 2009) ........................................................................18

*In re Lendingclub Sec. Litig.*,
282 F. Supp. 3d 1171 (N.D. Cal. 2017) ..............................................................17

*In re LinkedIn User Priv. Litig.*,
309 F.R.D. 573 (N.D. Cal. 2015) ........................................................................20

*In re MGM Mirage Sec. Litig.*,
708 F. App'x 894 (9th Cir. 2017) .......................................................................20

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) ..............................................................14

*In re Online DVD-Rental Antitrust Litig.*,
779 F.3d 934 (9th Cir. 2015) ..............................................................................12

*In re Qwest Commc'ns Int'l, Inc.*,
396 F. Supp. 2d 1178 (D. Colo. 2004) ..................................................................9

**Page**

*In re Resistors Antitrust Litig.*,
    2020 WL 2791922 (N.D. Cal. Mar. 24, 2020)......................................................................13

*In re Splunk Inc. Sec. Litig.*,
    2024 WL 923777 (N.D. Cal. Mar. 4, 2024)...........................................................................4

*In re VeriSign, Inc. Sec. Litig.*,
    2005 WL 7877645 (N.D. Cal. Jan. 13, 2005),
    *amending order*, 2005 WL 226154 (N.D. Cal. Jan. 31, 2005) .........................................16, 20

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
    2018 WL 6198311 (N.D. Cal. Nov. 28, 2018) ..............................................................7, 8, 14

*In re: Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
    2019 WL 2077847 (N.D. Cal. May 10, 2019) ...............................................................7, 8, 10

*In re Zynga Inc. Sec. Litig.*,
    2015 WL 6471171 (N.D. Cal. Oct. 27, 2015)......................................................................12

*Jabbari v. Wells Fargo & Co.*,
    2017 WL 5157608 (N.D. Cal. July 8, 2017),
    *aff'd*, 183 F. App'x 259 (9th Cir. 2020)..............................................................................20

*Low v. Trump Univ., LLC*,
    246 F. Supp. 3d 1295 (S.D. Cal. 2017)...............................................................................10

*Luna v. Marvell Tech. Grp.*,
    2018 WL 1900150 (N.D. Cal. Apr. 20, 2018) .......................................................................9

*May v. KushCo. Holdings, Inc.*,
    2020 WL 6587533 (C.D. Cal. Sept. 25, 2020) ......................................................................9

*McCulloch v. Baker Hughes Inteq Drilling Fluids, Inc.*,
    2017 WL 2257130 (E.D. Cal. May 23, 2017) .....................................................................15

*Millan v. Cascade Water Servs., Inc.*,
    310 F.R.D. 593 (E.D. Cal. 2015) .......................................................................................15

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
    339 U.S. 306 (1950)..........................................................................................................21

*Norris v. Mazzola*,
    2017 WL 6493091 (N.D. Cal. Dec. 19, 2017).....................................................................14

**Page**

*Parsons v. Ryan,*
754 F.3d 657 (9th Cir. 2014) ....................................................................16, 17, 18

*Police Ret. Sys. of St. Louis v. Granite Constr. Inc.,*
2021 WL 229310 (N.D. Cal. Jan. 21, 2021) ..................................................16

*Redwen v. Sino Clean Energy, Inc.,*
2013 WL 12129279 (C.D. Cal. Mar. 13, 2013) ...............................................8

*Rodriguez v. W. Publ'g Corp.,*
563 F.3d 948 (9th Cir. 2009) .............................................................5, 10, 20

*Salazar v. Midwest Servicing Grp., Inc.,*
2018 WL 3031503 (C.D. Cal. June 4, 2018) ...................................................8

*Sayce v. Forescout Techs., Inc.,*
754 F. Supp. 3d 878 (N.D. Cal. 2024) ...........................................................16

*SEB Inv. Mgmt. AB v. Symantec Corp.,*
335 F.R.D. 276 (N.D. Cal. 2020) ....................................................................18

*Spann v. J.C. Penney Corp.,*
314 F.R.D. 312 (C.D. Cal. 2016) ...............................................................12, 15

*Torrisi v. Tucson Elec. Power Co.,*
8 F.3d 1370 (9th Cir. 1993),
*aff'd* 881 F.3d 1111 (9th Cir. 2018).............................................................10

*Van Brockhurst v. Safeco Corp.,*
529 F.2d 943 (9th Cir. 1976) ...........................................................................6

*Vataj v. Johnson,*
2021 WL 1550478 (N.D. Cal. Apr. 20, 2021) ..........................................12, 13, 19

*Young v. LG Chem Ltd.,*
2019 WL 4187396 (9th Cir. Sept. 4, 2019) .....................................................5

**STATUTES, RULES, AND REGULATIONS**

15 U.S.C.
§78j(b)....................................................................................................2, 15, 19
§78t(a).........................................................................................................2, 15
§78u-4 ...........................................................................................1, 18, 20, 21

**Page**

Federal Rules of Civil Procedure
    Rule 23 ..........................................................................................................20
    Rule 23(a) ................................................................................................15, 20
    Rule 23(a)(1) .................................................................................................15
    Rule 23(a)(2) .................................................................................................16
    Rule 23(a)(3) .................................................................................................17
    Rule 23(a)(4) .................................................................................................18
    Rule 23(b)(3) ....................................................................................15, 19, 20
    Rule 23(c)(2)(B) ............................................................................................20
    Rule 23(e) .....................................................................................................2, 6
    Rule 23(e)(1) ..............................................................................................6, 20
    Rule 23(e)(1)(B) ...........................................................................................15
    Rule 23(e)(2) ..............................................................................................6, 14
    Rule 23(e)(2)(A) .............................................................................................6
    Rule 23(e)(2)(B) .............................................................................................7
    Rule 23(e)(2)(C)(i) .........................................................................................8
    Rule 23(e)(2)(C)(ii) ......................................................................................11
    Rule 23(e)(2)(C)(iii) .....................................................................................11
    Rule 23(e)(2)(D) ...........................................................................................12
    Rule 23(g) .....................................................................................................20
    Rule 23(h)(1) .................................................................................................21

**SECONDARY AUTHORITIES**

*Recent Trends in Securities Class Action Litigation: 2024 Full-Year Review*,
    Edward Flores and Svetlana Starykh (NERA Jan. 22, 2025) .................................................10

## NOTICE OF MOTION AND MOTION

### TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that lead plaintiff Uniformed Sanitationmen's Association Compensation Accrual Fund ("Lead Plaintiff" or "Plaintiff") will and hereby does move the Court for an Order, pursuant to Federal Rule of Civil Procedure ("Rule") 23: (1) certifying the proposed class ("Class") for purposes of effectuating the proposed settlement ("Settlement") of the above-captioned action ("Action"); (2) granting preliminary approval of the Settlement on the terms set forth in the Stipulation[1]; (3) authorizing the retention of Verita Global as the administrator for the Settlement ("Claims Administrator"); (4) approving the form and manner of notice of the Settlement to the Class; and (5) setting a hearing date for final approval of the Settlement ("Final Approval Hearing"), as well as the schedule for various deadlines in connection with the Settlement.

This unopposed motion is supported by the below memorandum of points and authorities and Appendix A thereto, the Pfefferbaum Declaration and exhibits attached thereto, the Stipulation and exhibits thereto, and the Declaration of Peter Crudo Regarding Notice and Administration ("Crudo Declaration" or "Crudo Decl."), filed herewith.

A proposed Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order") with annexed exhibits is also submitted herewith.

---

[1] Unless otherwise defined herein, capitalized terms shall have the meanings ascribed in the Stipulation of Settlement dated July 15, 2025 ("Stipulation"), a true and correct copy of which is attached as Exhibit 1 to the Declaration of Daniel J. Pfefferbaum in Support of Lead Plaintiff's Unopposed Motion for Preliminary Approval of Proposed Settlement (the "Pfefferbaum Decl."), submitted herewith. Emphasis is added and citations are omitted throughout unless otherwise noted.

**STATEMENT OF ISSUES TO BE DECIDED**

1.      Whether the Court will likely be able to certify the Class for purposes of effectuating the Settlement.

2.      Whether the Court will likely be able to approve the proposed $41.5 million Settlement of the Action under Rule 23(e)(2) so that notice of the Settlement's terms and conditions may be provided to members of the Class ("Class Members").

3.      Whether the proposed form and content of the Notice of Pendency and Proposed Settlement of Class Action ("Notice"), Proof of Claim and Release form ("Proof of Claim" or "Claim Form"), and Summary Notice of Proposed Settlement of Class Action ("Summary Notice"), and the plan for disseminating notice to Class Members, should be approved.

4.      Whether the Court should schedule a Final Approval Hearing in connection with the proposed Settlement, the proposed Plan of Allocation, and Lead Counsel's application for an award of attorneys' fees and expenses.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Following a Court-ordered mediation, the Settling Parties have reached a proposed Settlement of this securities class action in exchange for a payment of $41.5 million for the Class's benefit.  Lead Plaintiff now requests that the Court preliminarily approve the proposed Settlement.

As set forth below, the Settlement is the product of good-faith, arm's-length negotiations between experienced counsel, under the supervision of Mr. Miles Ruthberg of Phillips ADR Enterprises ("Mr. Ruthberg"), a highly respected mediator with extensive experience in complex securities litigation.  Lead Plaintiff reached the Settlement only after it had a thorough appreciation for the strengths and weaknesses of the case.  As detailed herein, settlement was not reached until Lead Counsel had: (i) thoroughly investigated the allegations, including interviewing former employees of Equinix; (ii) drafted and filed a detailed Amended Complaint for Violation of the Federal Securities Laws (ECF 43) ("Complaint"); (iii) successfully opposed Defendants' motion to dismiss the Complaint in part; (iv) obtained and reviewed document discovery and written discovery from Equinix; (v) deposed a corporate representative of Equinix Inc. pursuant to Fed. R. Civ. P 30(b)(6); (vi) obtained and reviewed document discovery from numerous third parties; (vii) moved for class certification; and (viii) prepared a detailed mediation statement and participated in a mediation process with Mr. Ruthberg, which resulted in acceptance by both parties of a mediator's proposal.  As set forth below, the Settlement is a very strong result that falls well within the range of possible approval.

Lead Plaintiff also requests certification for settlement purposes of a Class of all Persons who purchased or otherwise acquired Equinix common stock between May 3, 2019, and March 24, 2024, inclusive ("Class Period") and approval of the form and substance of the Notice, Proof of Claim, and Summary Notice, appended as Exhibits A-1, A-2, and A-3, respectively, to the Stipulation.   Lead Plaintiff also seeks the Court's approval of Verita Global as Claims Administrator and the means and methods for disseminating notice of the Settlement, and a finding that such notice comports with due process, the Federal Rules of Civil Procedure, and the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. §78u-4, *et seq*.

The Settlement meets the standards for preliminary approval because it is likely this Court will be able to find that the Settlement is fair, reasonable, and adequate under Rule 23(e). By granting preliminary approval, Lead Plaintiff will be able to notify the Class and solicit claims, requests for exclusion, and objections, at which point the Court will be able to consider whether to finally approve the Settlement.

## II.    OVERVIEW OF THE LITIGATION

The initial complaint was filed on May 2, 2024 by Wayne Chan. ECF 1. On August 15, 2024, the Court appointed Uniformed Sanitationmen's Association Compensation Accrual Fund as lead plaintiff and Robbins Geller Rudman & Dowd LLP ("Robbins Geller" or "Lead Counsel") as lead counsel. ECF 41. Following an extensive investigation by Lead Counsel, Lead Plaintiff filed the Complaint on September 12, 2024, asserting claims under §§10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") against all Defendants. ECF 43.

On October 10, 2024, Defendants moved to dismiss the Complaint. ECF 54. Lead Plaintiff opposed Defendants' motion on October 31, 2024 (ECF 56), and Defendants filed their reply on November 19, 2024 (ECF 58). On January 6, 2025, the Court denied in part and granted in part the motion. ECF 67 ("MTD Order"). The MTD Order found that Lead Plaintiff adequately alleged that Defendants overstated the Company's reported non-GAAP metric Adjusted Funds From Operations ("AFFO") and its drivers. The MTD Order dismissed Lead Plaintiff's claims concerning Defendants' alleged scheme to inflate Equinix's results by overselling its power capacity at its datacenters.

Thereafter, the Parties engaged in a Rule 26(f) conference, made initial disclosures, and negotiated a protective order and a stipulation concerning an ESI discovery protocol. Lead Plaintiff aggressively pursued discovery from Defendants, serving requests for production of documents, engaging in negotiations over the scope of those requests, as well as appropriate custodians and search terms. Lead Plaintiff propounded interrogatories on the Defendants concerning their potential defenses and deposed Equinix via a corporate representative pursuant to Federal Rule of Civil Procedure 30(b)(6). Lead Plaintiff also sought documents from 16 third parties, including Hindenburg Research, the Company's Auditor, PricewaterhouseCoopers, and

numerous securities analysts that covered the Company during the Class Period.  In total, Lead Plaintiff obtained 78,812 pages of documents.  Lead Plaintiff also objected and responded to both document discovery requests and interrogatories propounded by the Defendants and produced responsive documents.

On April 17, 2025, Lead Plaintiff filed its Motion to Certify Class, Appoint Class Representative and Appoint Class Counsel (ECF 90), which was supported by expert testimony on the issues of market efficiency and damages.  Defendants filed their opposition on May 29, 2025. ECF 94. An agreement to settle this Action was reached prior to the filing of Lead Plaintiff's reply.

During the Case Management Conference held on January 24, 2025, the Court directed the Parties to complete an early mediation prior to June 6, 2025.  ECF 82 at 4:13-15.  On June 4, 2025, the Parties, their counsel, and representatives of Defendants' D&O insurance carriers attended an all-day, in-person mediation with Mr. Ruthberg.  Prior to the mediation, the Parties submitted lengthy mediation statements and relevant exhibits.  Following approximately 10 hours of negotiations, the mediation concluded with Mr. Ruthberg making a mediator's proposal of $41.5 million to resolve this Action, which both parties accepted the following day.  The Parties executed a term sheet documenting their agreement in principle on June 12, 2025, and thereafter proceeded to formally document the proposed Settlement.  In sum, the Settlement was reached only after extensive motion practice, discovery, and settlement negotiations.  Accordingly, Lead Plaintiff and Lead Counsel were well informed of the strengths and weaknesses of Lead Plaintiff's claims, as well as the risks of continued litigation, and had a strong foundation for negotiating the Settlement.

## III.    THE SETTLEMENT TERMS

This Settlement requires Equinix to pay, or cause to be paid, $41.5 million into the Escrow Account, which amount, plus interest, comprises the Settlement Fund.  Stipulation, ¶2.2.  Notice to the Class and the cost of settlement administration ("Notice and Administration Expenses") will be funded by the Settlement Fund.  *Id.*, ¶2.11.  Lead Plaintiff proposes a nationally recognized class action settlement administrator to be retained subject to the Court's approval.  Verita Global was chosen because of its experience and the quality of its work in prior engagements for Lead

Counsel, and thus is best suited to execute the claims administration in this Action.  Lead Counsel respectfully requests that the Court approve its selection.  Based on the estimates provided by the proposed Claims Administrator, and assuming that no unexpected or extraordinary issues arise, Verita Global expects notice and claims administration costs to be approximately $858,000 through the initial distribution. *See, e.g.*, Crudo Decl., ¶27.  The proposed notice plan and plan for claims processing is discussed below in §§IV.C.5 and VI and in the Crudo Declaration.

The Notice and Summary Notice provide that Lead Counsel will move for final approval of the Settlement and: (a) an award of attorneys' fees in the amount not to exceed 25% of the Settlement Amount; (b) payment of expenses or charges resulting from the prosecution of the Action not in excess of $300,000; and (c) interest on such fees and expenses at the same rate and for the same period as is earned by the Settlement Fund.  The Notice explains that such fees, expenses, and awards shall be paid from the Settlement Fund.

Once Notice and Administration Expenses, Taxes, Tax Expenses, and Court-approved attorneys' fees and expenses have been paid from the Settlement Fund, the remaining amount, the Net Settlement Fund, shall be distributed pursuant to the Court-approved Plan of Allocation (set forth in the Notice) to Authorized Claimants who are entitled to a distribution of at least $10.00. Any amount remaining following the distribution shall be redistributed in an economically feasible manner until it is no longer feasible to do so, at which time any *de minimis* residual will be donated to an appropriate non-profit association.  The Plan of Allocation treats all Class Members equitably based on the timing and amount of their common stock purchases, acquisitions, and any sales.

The Settling Parties have also entered into a Supplemental Agreement, which provides that if prior to the Final Approval Hearing, requests for exclusion from the Class by Persons who would otherwise be Class Members, but who timely and validly request exclusion from the Class, exceeds a certain threshold, Defendants shall have the option (but not the obligation) to terminate the Settlement.  Stipulation, ¶7.3.  This type of agreement is standard in securities class actions and has no negative impact on the fairness of the Settlement.  *See, e.g.*, *In re Splunk Inc. Sec. Litig.*, 2024 WL 923777, at *6 (N.D. Cal. Mar. 4, 2024) ("The existence of a termination option triggered

by the number of class members who opt out of the Settlement does not by itself render the Settlement unfair.").

Next, in exchange for the benefits provided under the Stipulation, Class Members will release "all claims and causes of action of every nature and description, whether known or unknown, including claims and Unknown Claims . . . that Lead Plaintiff or any other Member of the Class: (i) asserted in the Complaint or could have asserted in any forum, that arise out of or relate to any of the allegations, transactions, facts, matters or occurrences, representations or omissions involved, set forth, or referred to in the Litigation, the Complaint, or any previous complaint filed in the Litigation; and (ii) that arise out of or that relate to the purchase or acquisition of Equinix common stock during the Class Period." Stipulation, ¶1.24. This release is limited to claims that relate to both the Complaint's factual allegations and to the purchase or ownership of Equinix common stock and therefore ensure that only claims "'based on the identical factual predicate as that underlying the claims in the settled class action'" are released. *In re Facebook, Inc. Consumer Priv. User Profile Litig.*, 2023 WL 8443230, at *5 (N.D. Cal. Oct. 10, 2023) (Chhabria J.) (quoting *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010), *aff'd sub nom.*, *Akins v. Facebook, Inc.*, 2025 WL 484621 (9th Cir. Feb. 13, 2025)).

Lastly, under the terms of the Stipulation, there is no clear sailing agreement, and Defendants have no right to the return of the Settlement Fund for any reason upon the occurrence of the Effective Date. Stipulation, ¶2.14. *See also* N.D. Cal. Guid. 1(g) (requiring the disclosure of any reversions).

## IV.    THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

Courts recognize that public policy strongly favors settlements to resolve disputes, "'particularly where complex class action litigation is concerned.'" *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019); *Young v. LG Chem Ltd.*, 2019 WL 4187396, at *1 (9th Cir. Sept. 4, 2019) (same). Moreover, courts should defer to "the private consensual decision of the parties" to settle and advance the "'overriding public interest in settling and quieting litigation.'" *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009); *Franklin v. Kaypro*

*Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989) (quoting *Van Brockhurst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976)).

Federal Rule of Civil Procedure 23(e) requires judicial approval for settlement of claims brought as a class action.  Pursuant to Rule 23(e)(1), the issue at preliminary approval turns on whether the Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal."  Fed. R. Civ. P. 23(e)(1).  Rule 23(e)(2) provides that a proposed class settlement may be approved "after a hearing and only on finding that it is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  In making this assessment, the Court must consider whether Lead Plaintiff and Lead Counsel: (i) "have adequately represented the class;" (ii) "the proposal was negotiated at arm's length;" (iii) "the relief provided for the class is adequate;" and (iv) "the proposal treats class members equitably relative to each other." *Id.*  In addition, the Ninth Circuit uses the following factors for preliminary approval, several of which overlap with Rule 23(e)(2):

> [T]he strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

As discussed below, the proposed Settlement easily satisfies each of the factors identified under Rule 23(e)(2), as well as the applicable Ninth Circuit factors, such that notice of the proposed Settlement should be provided to the Class in advance of the Final Approval Hearing.

### A.    Lead Plaintiff and its Counsel Have Adequately Represented the Class

Rule 23(e)(2)'s first two factors "look[] . . . to the conduct of the litigation and of the negotiations leading up to the proposed settlement."  Rule 23(e)(2) Advisory Committee notes to 2018 amendment.  This Settlement bears all of the hallmarks of a procedurally fair resolution under Rule 23(e)(2).

Rule 23(e)(2)(A) asks whether the plaintiff and its counsel have adequately represented the class.  This factor overlaps with the Ninth Circuit's factor regarding "the extent of discovery

completed and the stage of the proceedings." *Hanlon*, 150 F.3d at 1026.  As explained above, Lead Plaintiff and its counsel satisfy this factor as they have diligently prosecuted this Action to date.  *See supra*, §§I-II.  Given Lead Plaintiff's and Lead Counsel's demonstrated prosecution of the Action, it is without question that they have adequately represented the Class.  *See In re: Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2019 WL 2077847, at *1 (N.D. Cal. May 10, 2019) ("*Volkswagen II*") (finding securities class settlement to be procedurally fair where the "[l]ead [c]ounsel vigorously litigated this action during motion practice and discovery, and the record supports the continuation of that effort during settlement negotiations"); *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *6 (N.D. Cal. Dec. 18, 2018) (granting final approval and stating that at preliminary approval "the Court found that Class Counsel had vigorously prosecuted this action through dispositive motion practice, extensive initial discovery, and formal mediation" and that "given this prosecution of the action, counsel 'possessed "sufficient information to make an informed decision about settlement"'"), *aff'd sub nom.*, *Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020).

**B.    The Proposed Settlement Is the Result of Good Faith, Arm's-Length Negotiations by Informed, Experienced Counsel Who Were Aware of the Risks of the Action**

The Rule 23(e)(2)(B) factor asks whether "the [settlement] proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B).  As noted above, the proposed Settlement follows diligent litigation, during which Lead Counsel conducted an extensive pre-Complaint investigation, opposed the motion to dismiss, obtained over 75,000 pages of discovery, deposed the corporate defendant, and moved for class certification.  *Supra*, §§I-II; *see also In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2018 WL 6198311, at *5 (N.D. Cal. Nov. 28, 2018) ("*Volkswagen I*") ("Having used discovery and motion practice to obtain information about the case, Plaintiffs were able to assess the merits of the claims and to determine whether Defendants' settlement offers were reasonable.").  The Settlement was achieved only after the Parties engaged in a full-day mediation process before Mr. Ruthberg of Phillips ADR, which resulted in a $41.5 million mediator's proposal.  As part of the settlement discussions, Lead Counsel and Defendants' Counsel prepared and presented submissions concerning their respective

views on the merits of the Action. *See Volkswagen II*, 2019 WL 2077847, at *1 ("Lead Counsel also attests that both sides engaged in a series of intensive, arm's-length negotiations before they reached an agreement in principle to settle. . . .   There is no reason to doubt the veracity of Lead Counsel's representations."). The foregoing evinces that the Settlement is "the product of serious, informed, and noncollusive negotiations." *Volkswagen I*, 2018 WL 6198311, at *4-*5.

> ### C.   The Relief Provided to the Class Is Adequate
>
> #### 1.   The Substantial Benefits for the Class, Weighed Against the Costs, Risks, and Delay of Further Litigation, Support Preliminary Approval

Rule 23(e)(2)(C)(i) and the Ninth Circuit's factors concerning the "strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation"; and "the amount offered in settlement" (*Hanlon*, 150 F.3d at 1026) are also satisfied because the $41.5 million recovery provides a significant and immediate benefit to the Class, especially in light of the costs, risks, and delay posed by continued litigation.   Securities cases, like the present one, "'are highly complex and . . . securities class litigation is notably difficult and notoriously uncertain.'" *Hefler*, 2018 WL 6619983, at *13.

While Lead Plaintiff remains confident in its ability to ultimately prove the claims which survived the motion to dismiss, further litigation – including class certification, summary judgment and trial – is always a risky proposition. *See, e.g.*, *Salazar v. Midwest Servicing Grp., Inc.*, 2018 WL 3031503, at *6 (C.D. Cal. June 4, 2018) (A "[s]ettlement [a]greement's elimination of risk, delay, and further expenses weighs in favor of approval."). Further, complex securities fraud class actions such as this one present myriad risks that a plaintiff must overcome in order to ultimately secure a recovery. *See, e.g.*, *Redwen v. Sino Clean Energy, Inc.*, 2013 WL 12129279, at *5 (C.D. Cal. Mar. 13, 2013) ("Various issues would require extensive discovery and motion and trial practice, including proof of material misrepresentations, scienter and loss causation.   Courts experienced with securities fraud litigation "'routinely recognize that securities class actions present hurdles to proving liability that are difficult for plaintiffs to clear.'''").

While Lead Plaintiff would be required to prove all elements of its claims to prevail, Defendants need only succeed on one defense to potentially defeat the entire Action.   In fact, they

successfully obtained dismissal of Lead Plaintiff's power capacity allegations, which formed a significant portion of the Complaint. ECF 67. Currently pending before the Court was Lead Plaintiff's motion for class certification which Defendants strenuously opposed on the basis that Lead Plaintiff was subject to unique defenses based on the timing of its common stock purchases. In particular, Defendants argued that prior to Lead Plaintiff's purchases, another short-seller published a report raising the same concerns as the Hindenburg Report about the subjective nature of the Company's classification of capital expenditures. *See* ECF 94.

Risks of proving falsity, materiality, and scienter on the remaining statements present significant obstacles to Lead Plaintiff's success at summary judgment and trial, as the Court indicated through its dismissal of the power-related allegations on the basis of materiality. *See, e.g.*, *In re Celera Corp. Sec. Litig.*, 2015 WL 1482303, at *5 (N.D. Cal. Mar. 31, 2015) ("As with any securities litigation case, it would be difficult for Lead Plaintiff to prove loss causation and damages at trial. . . . Lead Plaintiff would risk recovering nothing without a settlement."); *Luna v. Marvell Tech. Grp.*, 2018 WL 1900150, at *3 (N.D. Cal. Apr. 20, 2018) (noting the risks of proving scienter, loss causation, and damages at trial).

Securities fraud cases concerning alleged accounting improprieties present particular challenges as plaintiff would likely need to rely on expert testimony to prove that Defendants' accounting treatment rose to the level of fraud – particularly here where AFFO is a non-GAAP figure defined by Equinix. *See May v. KushCo. Holdings, Inc.*, 2020 WL 6587533, at *4 (C.D. Cal. Sept. 25, 2020) ("It is well-settled in the Ninth Circuit that 'a failure to follow GAAP, without more, does not establish scienter.'"). "GAAP generally tolerates a range of reasonable treatments, leaving the choice among reasonable treatments to management." *In re Qwest Commc'ns Int'l, Inc.*, 396 F. Supp. 2d 1178, 1186 (D. Colo. 2004). Defendants maintained that they adequately disclosed all material information with respect to their AFFO metric; the alleged accounting manipulation was quantitatively immaterial; there was no intent to defraud or motive to commit fraud; and the purported corrective disclosures neither revealed new information to the market nor caused investors' losses during the Class Period. Specifically, Defendants maintained that the market was already aware of risks concerning the Company's classification of Capital

Expenditures, and also that the news about AFFO revealed by the Hindenburg Report did not cause the stock to drop on the publication date of the Report. *See* ECF 54, 58, 94. Moreover, given the mix of information revealed on certain disclosure dates, including information related to the dismissed power-related allegations, a requirement to disaggregate stock price declines presented the potential to significantly reduce damages, if not eliminate them altogether.

Lead Plaintiff would also need to prevail at summary judgment, pretrial motions, trial, and subsequent appeals, a process that could possibly extend for years. Settlement is favored where, as here, the case is "'complex and likely to be expensive and lengthy to try,'" and presents numerous risks beyond the "'inherent risks of litigation.'" *Low v. Trump Univ., LLC*, 246 F. Supp. 3d 1295, 1301 (S.D. Cal. 2017) (quoting *Rodriguez*, 563 F.3d at 966, and *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993)), *aff'd* 881 F.3d 1111 (9th Cir. 2018); *In re Apple Inc. Sec. Litig.*, 2024 WL 3297079, at *3 (N.D. Cal. June 3, 2024) ("Further litigation, absent settlement would likely be lengthy and would present several difficulties to resolve."); *Volkswagen II*, 2019 WL 2077847, at *2 ("[E]ven if Plaintiffs had prevailed, their recovery – after class certification, trial, and appeals – would have come years in the future. Taking $48 million now, instead of holding out for the chance of $147 million at some point in the future, is a sensible decision.").

The $41.5 million Settlement balances the risks, costs, and delay inherent in complex cases evenly with respect to all parties. Lead Plaintiff negotiated a Settlement that recovers approximately 18% of the estimated reasonably recoverable common stock damages. This result is many multiples of the median ratio of settlements to investor losses in securities cases in 2024. *See* Pfefferbaum Decl., Ex. 2 (Edward Flores and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2024 Full-Year Review* at 27, Fig. 24 (NERA Jan. 22, 2025) (median ratio of settlement to investor losses was 1.2% in 2024)); *see Hefler*, 2018 WL 6619983, at *6 ("[C]ounsel's preliminary approval motion included information regarding the settlement outcomes of similar cases, further indicating that counsel 'had an adequate information base' when negotiating the settlement.").

Thus, the benefits created by the Settlement weigh heavily in favor of granting the motion for preliminary approval. Considering the risks of continued litigation and the time and expense that would be incurred to prosecute the Action through a trial, the $41.5 million Settlement is a strong recovery that is in the Class's best interests.

### 2.    The Proposed Method for Distributing Relief Is Effective

As demonstrated below in §VI and in the Crudo Declaration, the methods of proposed notice and claims administration process (Rule 23(e)(2)(C)(ii)) are effective. The notice plan includes direct mail notice to all those who can be identified with reasonable effort. In addition, a Settlement-specific website will be created where key documents will be posted, including the Stipulation, Notice, Proof of Claim, and Preliminary Approval Order. Crudo Decl., ¶¶6-18.

The claims process is also effective and includes a standard claim form that requests the information necessary to calculate a claimant's claim amount pursuant to the Plan of Allocation ("Plan"). The Plan will govern how Class Members' claims will be calculated and, ultimately, how money will be distributed to Authorized Claimants. The Plan was prepared with the assistance of Lead Plaintiff's damages consultant and is based primarily on the consultant's estimation of the amount of artificial inflation in the prices of Equinix common stock during the Class Period. A thorough claim review process, including how deficiencies are addressed, is also explained in the Crudo Declaration. *Id.*, ¶¶24-26.

### 3.    Attorneys' Fees

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). As discussed above (*supra*, §III), Lead Counsel intends to seek an award of attorneys' fees not to exceed 25% of the Settlement Amount and expenses in an amount not to exceed $300,000, plus interest on both amounts. Lead Counsel's lodestar to date is approximately $2.6 million.[2] This fee request reflects the successful result achieved for the Class, and is consistent with the 25% "benchmark award for attorney fees."

---

[2]    If preliminary approval is granted, Lead Counsel will present its total lodestar in connection with its fee application at the final approval stage, after further detailed review and adjustment of its contemporaneous daily time entries to account for billing judgment.

*See Hayden v. Portola Pharms. Inc.*, 2023 WL 2375242, at *2 (N.D. Cal. Mar. 6, 2023); *Hanlon*, 150 F.3d at 1029.  In addition, Lead Counsel will request that at least 90% of the fees and all of the expenses awarded be paid at the time the Court makes its award.

Approval of the requested attorneys' fee and expense application is separate from approval of the Settlement, and the Settlement may not be terminated based on any ruling with respect to attorneys' fees.  Stipulation, ¶6.4.

### 4.    Other Agreements Made In Connection With the Resolution of the Case

The Parties have entered into a standard supplemental agreement which provides that if Class Members opt out of the Settlement such that the requests for exclusion from the Class equals or exceeds an agreed-upon threshold, Defendants shall have the option to terminate the Settlement. Stipulation, ¶7.3.  Such agreements are common and do not undermine the propriety of the Settlement.  *See, e.g.*, *Hefler*, 2018 WL 6619983, at *7 ("The existence of a termination option triggered by the number of class members who opt out of the Settlement does not by itself render the Settlement unfair.").  While the Supplemental Agreement is identified in the Stipulation, ¶7.3, and the nature of the agreement is explained in the Stipulation and here, the terms are properly kept confidential.[3]

### 5.    The Proposed Plan of Allocation Is Designed to Treat Class Members Equitably

Rule 23(e)(2)(D) asks whether the proposal, here the Plan of Allocation, treats class members equitably relative to each other.  Drafted with the assistance of Lead Plaintiff's damages consultant, the Plan is fair, reasonable, and adequate because it does not treat Lead Plaintiff or any other Class Member preferentially.  *See Vataj v. Johnson*, 2021 WL 1550478, at *10 (N.D. Cal. Apr. 20, 2021); *In re Zynga Inc. Sec. Litig.*, 2015 WL 6471171, at *10 (N.D. Cal. Oct. 27, 2015).

---

[3]      *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 948 (9th Cir. 2015) (finding settlement was not rendered unfair by the inclusion of an opt-out provision where "[o]nly the exact threshold, for practical reasons, was kept confidential"); *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 329-30 (C.D. Cal. 2016) (considering confidential supplemental agreement).

The Plan, set forth in the Notice (Stipulation, Ex. A-1 at 12-16), is designed to equitably distribute the Net Settlement Fund (*see* Stipulation, ¶1.18) to those Class Members who suffered economic losses as a proximate result of the alleged wrongdoing.  In developing the Plan, Lead Plaintiff's damages consultant calculated the potential amount of estimated alleged artificial inflation in Equinix common stock proximately caused by Defendants' alleged false and misleading statements and material omissions.  To do this, Lead Plaintiff's damages consultant considered, among other things, the market and industry adjusted price changes in Equinix common stock prices following certain corrective disclosures regarding Equinix and the allegations in the Complaint that survived the motion to dismiss.  Based on the formula in the Plan, a "Recognized Loss Amount" will be calculated for each transaction in Equinix common stock. The Net Settlement Fund will be distributed to Authorized Claimants on a *pro rata* basis based on the relative size of their Recognized Loss Amount.  The amount of the payment will depend on, among other factors, how many Class Members file valid claims, and the aggregate value of the Recognized Loss Amounts represented by valid and acceptable Claim Forms.

Lead Plaintiff, just like all other Class Members, will be subject to the same formula for distribution of the Settlement.  *See Ciuffitelli v. Deloitte & Touche LLP*, 2019 WL 1441634, at *18 (D. Or. Mar. 19, 2019) (finding "[t]he Proposed Settlement does not provide preferential treatment to Plaintiffs or segments of the class" where "the proposed Plan of Allocation compensates all Class Members and Class Representatives equally in that they will receive a *pro rata* distribution based of the Settlement Fund based on their net losses").  Courts have previously found plans that award *pro rata* shares to each class member to be fair and reasonable.  *See, e.g.*, *Vataj*, 2021 WL 1550478, at *10 ("The Settlement Fund will thus be distributed on a *pro rata* basis according to each class member's recognized loss."); *In re Resistors Antitrust Litig.*, 2020 WL 2791922, at *2-*3 (N.D. Cal. Mar. 24, 2020) (approving plan of allocation using *pro rata* basis of distribution). Accordingly, the Plan is fair, reasonable, and applies in an equitable manner to all Class Members.

### D.    The Remaining Ninth Circuit Factors Are Satisfied

#### 1.    Risk of Maintaining Class Action Status Through Trial

The issue of class certification had been partially briefed when the Settlement was reached, with Lead Plaintiff having filed a motion and Defendants having filed a response in opposition. Even if the Class was initially certified Defendants could have moved to decertify the Class or shorten the Class Period. *See, e.g.*, *Fleming v. Impax Lab'ys Inc.*, 2022 WL 2789496, at *6 (N.D. Cal. July 15, 2022) ("[T]here is always a risk of decertification – especially when, as here, Plaintiffs must overcome causation and damages defenses."). Accordingly, this factor supports preliminary approval.

#### 2.    Experience and Views of Counsel

The opinion of experienced counsel supporting a class settlement after arm's-length negotiations is entitled to considerable weight. *Norris v. Mazzola*, 2017 WL 6493091, at *8 (N.D. Cal. Dec. 19, 2017). "[I]ndeed a presumption of fairness is usually appropriate if class counsel recommends the settlement after arm's-length bargaining." *Volkswagen I*, 2018 WL 6198311, at *5. Lead Counsel here has significant experience in securities and other complex class action litigation and has negotiated scores of substantial class action settlements throughout the country. *See* www.rgrdlaw.com. And by the time settlement discussions began, Lead Counsel had a firm understanding of the strengths and weaknesses of the claims, both factually and legally. *Supra*, §§I-II. "There is nothing to counter the presumption that Lead Counsel's recommendation is reasonable." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008).

In sum, each factor identified under Rule 23(e)(2) and by the Ninth Circuit is satisfied. Given the litigation risks involved, the complexity of the underlying issues, and the skill of defense counsel, the $41.5 million recovery is significant. It could not have been achieved without the full commitment by Lead Plaintiff and its counsel. The Settlement is fair, adequate, and reasonable, and such that notice should be sent to the Class.

## V.     CERTIFICATION OF THE CLASS FOR PURPOSES OF THE SETTLEMENT IS APPROPRIATE

Under the terms of the Settlement, Defendants have agreed, for purposes of settlement, to certification of the following Class: "all Persons who purchased or otherwise acquired Equinix common stock between May 3, 2019, and March 24, 2024, inclusive, and who suffered damages by Defendants' alleged violations of §§10(b) and 20(a) of the Exchange Act."  Stipulation, ¶1.4.[4] The Class is the same that is alleged in the Complaint.  *See* Complaint, ¶¶2, 216.

At this stage, the Court should determine whether it "will likely be able" to grant certification to the proposed Class at final approval.  Fed. R. Civ. P. 23(e)(1)(B).  As set forth in Lead Plaintiff's Notice of Motion and Motion to Certify Class, Appoint Class Representative and Appoint Class Counsel; Memorandum of Points and Authorities in Support Thereof, Lead Plaintiff submits that the Class satisfies the requirements of Rule 23(a) (numerosity, commonality, typicality, and adequacy of representation) as well as the requirements of Rule 23(b)(3).  ECF 90; *see Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997).

### A.     The Requirements of Rule 23(a) Are Met

#### 1.     Numerosity Is Satisfied

The numerosity requirement is met where the party seeking certification shows the class is "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  This does not mean that joinder is impossible, but rather "'only that the court must find that the difficulty or inconvenience of joining all members of the class makes class litigation desirable.'"  *McCulloch v. Baker Hughes Inteq Drilling Fluids, Inc.*, 2017 WL 2257130, at *7 (E.D. Cal. May 23, 2017) (quoting *Millan v. Cascade Water Servs., Inc.*, 310 F.R.D. 593, 603 (E.D. Cal. 2015)).  "While no specific minimum number of potential class members exists, a 'proposed class of at least forty members presumptively satisfies the numerosity requirement.'"  *Hatamian v. Advanced Micro*

---

[4]     Excluded from the Class are: "(1) Defendants and members of the immediate families of each Individual Defendant; (2) the officers, directors, and affiliates of Defendants, at all relevant times, and members of their immediate families; (3) the legal representatives, heirs, successors, or assigns of any of the foregoing; and (4) any entity in which any Defendant has or had a controlling interest.  Also excluded from the Class is any Person who properly excludes himself, herself, itself, or themselves from the Class by submitting a valid and timely request for exclusion."  *Id.*

*Devices, Inc.*, 2016 WL 1042502, at *4 (N.D. Cal. Mar. 16, 2016); *see Davy v. Paragon Coin, Inc.*, 2020 WL 4460446, at *5 (N.D. Cal. June 24, 2020) ("Although '[t]here is no absolute minimum number of plaintiffs necessary to demonstrate that the putative class is so numerous so as to render joinder impracticable[,] . . . [j]oinder has been deemed impracticable in cases involving as few as 25 class members[.]'") (alterations in original).  In assessing this requirement here, "'[t]he Court certainly may infer that, when a corporation has millions of shares trading on a national exchange,' the numerosity requirement is met."  *Hayes v. Magnachip Semiconductor Corp.*, 2016 WL 7406418, at *3 (N.D. Cal. Dec. 22, 2016).  "'In cases involving securities traded on national stock exchanges, numerosity is practically a given.'"  *Sayce v. Forescout Techs., Inc.*, 754 F. Supp. 3d 878, 900 (N.D. Cal. 2024).

Equinix common stock trades globally on the Nasdaq market, and had, on average, more than 89.5 million shares outstanding during the Class Period.  ECF 90-3, ¶32.  This easily establishes numerosity.  *See Borteanu v. Nikola Corp.*, 348 F.R.D. 239, 251 (D. Ariz. 2025) (noting that millions of outstanding shares traded on a national exchange sufficient to show numerosity); *Police Ret. Sys. of St. Louis v. Granite Constr. Inc.*, 2021 WL 229310, at *4 (N.D. Cal. Jan. 21, 2021) (between 40 and 49 million shares outstanding); *In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628, 634 (C.D. Cal. 2009) (36 million shares outstanding).

## 2. Commonality Is Satisfied

Rule 23(a)(2) requires a showing that there are "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  "Plaintiffs need not show . . . that 'every question in the case, or even a preponderance of questions, is capable of class wide resolution.  So long as there is "even a single common question," a would-be class can satisfy the commonality requirement of Rule 23(a)(2).'"  *Parsons v. Ryan*, 754 F.3d 657, 675 (9th Cir. 2014).  "Commonality exists where 'the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class.'"  *Fleming v. Impax Lab'ys.*, 2021 WL 5447008, at *6 (N.D. Cal. Nov. 22, 2021).  "Commonality, like numerosity, is a prerequisite which plaintiffs generally, and which plaintiffs here, satisfy very easily."  *In re VeriSign, Inc. Sec. Litig.*, 2005 WL 7877645, at *5 (N.D. Cal. Jan. 13, 2005), *amending order*, 2005 WL 226154 (N.D. Cal. Jan. 31, 2005).

Class Members have allegedly suffered a common injury – losses on their investments in Equinix common stock – and their claims depend upon numerous common issues capable of class-wide resolution, including: (i) whether the Defendants' public statements during the Class Period contained material misrepresentations and omissions concerning the Company's classification of CapEx and calculation of AFFO; (ii) whether Defendants engaged in a scheme to defraud investors by manipulating the Company's accounting to meet bonus targets; (iii) whether Defendants' misrepresentations and omissions concerning the state of the Company and violation of Defendants' accounting policies were material; (iv) whether Defendants acted knowingly or recklessly (*i.e.*, with scienter); (v) whether defendants Meyers and Taylor controlled Equinix and its alleged violations of the securities laws; (vi) whether the market price of Equinix common stock was artificially inflated as a result of Defendants' alleged misrepresentations and omissions; (vii) whether Defendants' alleged misrepresentations and omissions caused Class Members to suffer a compensable loss; and (viii) whether Class Members have sustained damages, and the proper measure of damages.  "Although the amount to which each class member is entitled will differ, the issues described above are common to the proposed Settlement Class.  Accordingly, the Court finds that the commonality requirement is met in this case." *Fleming*, 2021 WL 5447008, at *6.

### 3.    Typicality Is Satisfied

Rule 23(a)(3) requires that the proposed class representative's claims be "typical" of the claims of the class.  The typicality requirement "imposes only a modest burden." *In re Lendingclub Sec. Litig.*, 282 F. Supp. 3d 1171, 1182 (N.D. Cal. 2017).  "The test of typicality is 'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Parsons*, 754 F.3d at 685.  "The purpose of the typicality requirement is to 'assure that the interest of the named representative aligns with the interests of the class.'" *In re Intuitive Surgical Sec. Litig.*, 2016 WL 7425926, at *5 (N.D. Cal. Dec. 22, 2016) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).  "'Under the rule's permissive

standards, representative claims are "typical" if they are reasonably coextensive with those of absent class members; they need not be substantially identical.'" *Parsons*, 754 F.3d at 685.

Here, Lead Plaintiff's claims are "typical" of other Class Members' claims because they arise out of the same alleged course of conduct and, like other Class Members, they all allege that they purchased Equinix common stock during the Class Period at prices artificially inflated due to Defendants' material misstatements and omissions, and were damaged when the truth emerged. Thus, Lead Plaintiff and the Class assert the same legal claims, which relate to the adequacy of such public statements and will rely on the same facts and legal theories to establish liability.

### 4.    Lead Plaintiff and Lead Counsel Are Adequate

Under Rule 23(a)(4), the parties representing the class must "fairly and adequately protect the interests of the class." The adequacy prerequisite is concerned with two questions: "'(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members[,] and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *SEB Inv. Mgmt. AB v. Symantec Corp.*, 335 F.R.D. 276, 284-85 (N.D. Cal. 2020) (alteration in original) (quoting *Hanlon*, 150 F.3d at 1020).

Lead Plaintiff and Lead Counsel readily satisfy adequacy. First, based upon its purchase of Equinix common stock during the Class Period and the losses suffered as a result of Defendants' alleged misconduct, Lead Plaintiff's interests are directly aligned with – rather than antagonistic to – the interests of other Class Members, who were injured by the same alleged materially false and misleading statements and omissions as Lead Plaintiff. Second, there is no evidence of conflicts between Lead Plaintiff and the Class. *See In re Juniper Networks, Inc. Sec. Litig.*, 264 F.R.D. 584, 590 (N.D. Cal. 2009) (finding that the class representatives were adequate because there was no evidence of conflicts of interest with the class).

Lead Plaintiff has also retained counsel who satisfy this adequacy requirement. "[Robbins Geller] have extensive experience with complex securities litigation, including as lead counsel in PSLRA cases litigated in this district, and have been praised by numerous judges for the quality of the firm's representation in class action litigation." *Fleming*, 2021 WL 5447008, at *7. As its actions in this case and others demonstrate, Lead Plaintiff's chosen counsel has committed, and is

willing to commit, considerable resources to prosecuting this Action, and has vigorously represented the Class's interests.  Thus, the adequacy requirement is satisfied.

###### B.    The Requirements of Rule 23(b)(3) Are Also Met

Lead Plaintiff seeks to certify the Class pursuant to Rule 23(b)(3), under which certification is appropriate where: (1) questions of law or fact common to class members predominate over questions affecting only individual members; and (2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  These requirements are readily satisfied here.

The predominance inquiry of Rule 23(b)(3) asks whether "'proposed classes are sufficiently cohesive to warrant adjudication by representation.'"  *Hatamian*, 2016 WL 1042502, at *3.  As the Supreme Court has explained, "[p]redominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws."  *Amchem*, 521 U.S. at 625.

Here, the common questions identified above clearly predominate over individual questions because Defendants' alleged fraudulent statements and omissions affected all Class Members in the same manner (*i.e.*, through public statements made to the market and documents publicly filed with the United States Securities and Exchange Commission).  *Vataj*, 2021 WL 1550478, at *6 (finding common questions predominate where same operative facts apply to each class member).  Moreover, virtually all of the elements under §10(b) involve common questions of law and fact that predominate over individualized issues.  *Fleming*, 2021 WL 5447008, at *6; *Cooper*, 254 F.R.D. at 640.

Finally, the superiority element of Rule 23(b)(3) tests whether class treatment is "superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  In cases like this one, where "'recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis,'" a class action is the superior method of adjudication.[5]

---

[5]    When a class is seeking certification for purposes of settlement, "the superiority inquiry focuses '"on the efficiency and economy elements of the class action so that cases allowed under [Rule 23(b)(3)] are those that can be adjudicated most profitably on a representative basis."'"  *Ford v. CEC Ent, Inc.*, 2015 WL 11439032, at *4 (S.D. Cal. July 7, 2015) (alteration in original);

*In re LinkedIn User Priv. Litig.*, 309 F.R.D. 573, 585 (N.D. Cal. 2015); *VeriSign*, 2005 WL 7877645, at *9 ("Class actions are particularly well-suited in the context of securities litigation, wherein geographically dispersed shareholders with relatively small holdings would otherwise have difficulty in challenging wealthy corporate defendants.").  Moreover, Lead Plaintiff is not aware of any other pending actions seeking similar relief.

In sum, all of the requirements of Rules 23(a) and (b)(3) are satisfied, and there are no issues that would prevent the Court from certifying the Class for Settlement purposes, appointing Lead Plaintiff as class representative, and appointing Lead Counsel as class counsel pursuant to Rule 23(g).

## VI.    THE PROPOSED FORMS AND METHOD OF PROVIDING NOTICE TO THE CLASS ARE APPROPRIATE AND SATISFY FEDERAL RULE OF CIVIL PROCEDURE 23, THE PSLRA, AND DUE PROCESS

Rule 23(c)(2)(B) requires that notice of a settlement be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *see also* Fed. R. Civ. P. 23(e)(1).  Courts evaluating proposed notice documents have held that "'[n]otice is satisfactory if it "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard."'" *Rodriguez*, 563 F.3d at 962.

Here, the Settling Parties propose to send, by email or first class mail, postage prepaid, individual copies of the Summary Notice to all potential Class Members who can reasonably be identified and located.  Crudo Decl., ¶¶6-7; Preliminary Approval Order, ¶10.  The Summary Notice will also be published over a national newswire service.  Preliminary Approval Order, ¶10. The proposed methods of providing notice satisfy the requirements of Rule 23, the PSLRA, and due process.  *See In re MGM Mirage Sec. Litig.*, 708 F. App'x 894, 896 (9th Cir. 2017); *see also Jabbari v. Wells Fargo & Co.*, 2017 WL 5157608, at *6 (N.D. Cal. July 8, 2017) (Chhabria, J.) (finding notice and notice plan which "adequately advise the Settlement Class about: A. The class

---

*Hyundai*, 926 F.3d at 556-57 ("The criteria for class certification are applied differently in litigation classes and settlement classes" and "manageability is not a concern in certifying a settlement class.").

action; B. The terms of the proposed Settlement, the benefits available to each Settlement Class Member, and proposed fees and costs to Class Counsel; C. Each Settlement Class Member's right to object or opt out of the settlement, and the timing and procedures for doing so; D. Preliminary court approval of the proposed Settlement; and E. The date of the Fairness Hearing as well as the rights of Settlement Class Members to file documentation in support of or in opposition to and appear in connection with said hearing" fully satisfied Rule 23 and due process requirements), *aff'd*, 183 F. App'x 259 (9th Cir. 2020).

The proposed full-length Notice, which will be placed on the Settlement website, provides detailed information in plain English.[6]  The content of the proposed Notice and Summary Notice are "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

Also, Rule 23(h)(1) requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." Fed. R. Civ. P. 23(h)(1).  The proposed plan satisfies this requirement.  Class Members will be informed that Lead Counsel will apply to the Court for an award of attorneys' fees not to exceed 25% of the Settlement Amount and litigation expenses not to exceed $300,000, to be paid from the Settlement Fund, plus the interest earned on both amounts.

In sum, the notice program proposed in connection with the Settlement and the form and content of the notices satisfy all applicable requirements of the Federal Rules of Civil Procedure, due process, and the PSLRA.  Accordingly, the Court should also approve the proposed form and method of giving notice to the Class.

---

[6]     The Notice describes the proposed Settlement and sets forth, among other things: (i) the nature, history, and status of the Action; (ii) the definition of the Class and who is excluded; (iii) the reasons the Parties have proposed the Settlement; (iv) the amount of the Settlement Fund; (v) the estimated average distribution per damaged share; (vi) the Class's claims and issues; (vii) the Parties' disagreement over damages and liability; (viii) the maximum amount of attorneys' fees and expenses that Lead Counsel intends to seek in connection with final Settlement approval; (ix) the plan for allocating the Settlement proceeds to the Class; and (x) the date, time, and place of the Final Approval Hearing.

## VII.    NORTHERN DISTRICT OF CALIFORNIA PROCEDURAL GUIDANCE

The *Procedural Guidance* for class action settlements has been satisfied and weighs in favor of approving the Settlement.  *See* Appendix A.

## VIII.    CONCLUSION

For each of the foregoing reasons, the Court should enter the [Proposed] Order Preliminarily Approving Settlement and Providing for Notice, which will: (i) preliminarily approve the Settlement; (ii) preliminarily certify the Class for settlement purposes; (iii) approve the form and manner of providing notice to the Class; and (iv) set a Final Approval Hearing date to consider final approval of the Settlement and related matters.

DATED:  July 15, 2025                                 Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
SHAWN A. WILLIAMS
DANIEL J. PFEFFERBAUM
HADIYA K. DESHMUKH
HAILEY S. ZANUTTO

                                            */s/ Daniel J. Pfefferbaum*
                                            DANIEL J. PFEFFERBAUM

Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
shawnw@rgrdlaw.com
dpfefferbaum@rgrdlaw.com
hdeshmukh@rgrdlaw.com
hzanutto@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
ELLEN GUSIKOFF STEWART
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)
elleng@rgrdlaw.com

*Lead Counsel for Lead Plaintiff*

PITTA LLP
VINCENT F. PITTA
120 Broadway, 28th Floor
New York, NY 10271
Telephone: 212/652-3890
vpitta@pittalaw.com

*Additional Counsel for Lead Plaintiff*

# APPENDIX A

## (Compliance with *Procedural Guidance* of Northern District of California)

A.    **Guidance 1: Information about the Settlement**

1.    **Guidance 1(a): Any differences between the settlement class and the class proposed in the operative complaint (or, if a class has been certified, the certified class) and an explanation as to why the differences are appropriate.**

None.

2.    **Guidance 1(b): Any differences between the claims to be released and the claims in the operative complaint (or, if a class has been certified, the claims certified for class treatment) and an explanation as to why the differences are appropriate.**

The claims being released closely track the claims alleged.  The Complaint alleges federal securities law claims based on certain alleged misrepresentations and omissions by Defendants in connection with the purchase or acquisition of Equinix common stock during the Class Period. The definition of "Released Plaintiff's Claims" is properly limited to claims that both "(i) asserted in the Complaint or could have asserted in any forum, that arise out of or relate to any of the allegations, transactions, facts, matters or occurrences, representations or omissions involved, set forth, or referred to in the Litigation, the Complaint, or any previous complaint filed in the Litigation; and (ii) that arise out of or relate to the purchase or acquisition of Equinix common stock during the Class Period" Stipulation, ¶1.24.  Accordingly, the release is carefully tailored to the claims alleged.  This release is substantially similar to that included in *Hayden v. Portola Pharms. Inc.*, 2023 WL 2376940, at *4 (N.D. Cal. Mar. 6, 2023).

3.    **Guidance 1(c): The class recovery under the settlement (including details about and the value of injunctive relief), the potential class recovery if plaintiffs had fully prevailed on each of their claims, claim by claim, and a justification of the discount applied to the claims.**

The Class will receive $41.5 million in cash, less approved fees and expenses, through the Settlement.  As set forth in the attached supporting memorandum ("Preliminary Approval Memorandum"), had Lead Plaintiff fully prevailed on its claims surviving the motion to dismiss, estimated reasonably recoverable damages at trial, consistent with the methodology in the Plan of Allocation, would have been approximately $235 million.  There are many factors that contributed

to Lead Plaintiff's acceptance of a discount to that damages value, which are more fully explained in §IV.C.1 of the Preliminary Approval Memorandum.

4. **Guidance 1(d): Any other cases that will be affected by the settlement, an explanation of what claims will be released in those cases if the settlement is approved, the class definitions in those cases, their procedural posture, whether plaintiffs' counsel in those cases participated in the settlement negotiations, a brief history of plaintiffs' counsel's discussions with counsel for plaintiffs in those other cases before and during the settlement negotiations, an explanation of the level of coordination between the two groups of plaintiffs' counsel, and an explanation of the significance of those factors on settlement approval. If there are no such cases, counsel should so state.**

Counsel believes there are no other cases that will be affected by the Settlement.

5. **Guidance 1(e): The proposed allocation plan for the settlement fund.**

The proposed allocation plan is set forth in detail in the Notice of Pendency and Proposed Settlement of Class Action ("Notice") (Stipulation, Ex. A-1 at 12-16).

6. **Guidance 1(f): If there is a claim form, an estimate of the expected claim rate in light of the experience of the selected claims administrator and/or counsel based on comparable settlements, the identity of the examples used for the estimate, and the reason for the selection of those examples.**

This is a non-reversionary settlement in which the entire Settlement Fund will be paid out. Stipulation, ¶2.14. Once the Settlement becomes final, nothing is returned to Defendants. With respect to the number of class members, as well as their identities, these are unknown in securities cases. *See Vataj*, 2021 WL 1550478, at *11 ("The Court understands that the majority of class members are likely beneficial purchasers whose securities were purchased by brokerage firms, banks, institutions, and other third-party nominees in the name of the nominee, on behalf of the beneficial purchaser."). Because the number and identity of class members is unknown, both the number and percentage of class members expected to file claims is unknown. Indeed, the number of claims varies widely from case to case as does the size of each claim. In a securities class action settlement, class member participation is determined by the number of damaged shares (shares affected by the inflation caused by the alleged misrepresentations and omissions) represented by the claims submitted. This more accurately reflects how much of the Class is seeking to participate

in the Settlement. Consistent with its experience in securities class actions, and based on the effectiveness of the proposed notice plan, Lead Counsel anticipates that the vast majority of damaged shares will be represented by the claims submitted in this Action.

> **7.    Guidance 1(g): In light of Ninth Circuit case law disfavoring reversions, whether and under what circumstances money originally designated for class recovery will revert to any defendant, the expected and potential amount of any such reversion, and an explanation as to why a reversion is appropriate.**

The Settlement is non-reversionary; there will be no reversions. Stipulation, ¶2.14.

**B.    Guidance 2: Settlement Administration**

> **1.    Guidance 2(b): Address the settlement administrator's procedures for securely handling class member data (including technical, administrative, and physical controls; retention; destruction; audits; crisis response; etc.), the settlement administrator's acceptance of responsibility and maintenance of insurance in case of errors, the anticipated administrative costs, the reasonableness of those costs in relation to the value of the settlement, and who will pay the costs.**

Verita Global's Information Security Policy Framework is aligned to ISO/IEC 27002:2013 which is reviewed on an annual basis and communicated to all employees through a comprehensive training program. Crudo Decl., ¶29. Verita Global maintains a number of corporate governance policies that reflect the manner in which it does business, including an employee Code of Conduct that outlines the professional, responsible, and ethical guidelines that govern employee conduct. These policies are available on Verita Global's website. *Id.*, ¶30.

**C.    Guidance 3: The Proposed Notices to the Class Are Adequate**

As set forth in §IV.C.2 of the Preliminary Approval Memorandum, Lead Counsel believes that both the form of notice, which incorporates the suggested language from the *Procedural Guidance* (Stipulation, Ex. A-1 at 10), and the plan for disseminating the notice, satisfy Rule 23, the PSLRA, and due process.

**D.    Guidance 4 and 5: Opt-Outs and Objections**

The proposed Notice complies with Rule 23(e)(5) in that it discusses the rights Class Members have concerning the Settlement. The proposed Notice includes information on a Class Member's right to: (i) request exclusion and the manner for submitting such a request; (ii) object

to the Settlement, or any aspect thereof, and the manner for filing an objection; and (iii) participate in the Settlement and instructions on how to complete and submit a Claim Form to the Claims Administrator. *See* Stipulation, Ex. A-1 at 6, 8-10. With respect to exclusion requests, the Notice requires only the information needed to opt out – the common stock purchased, acquired, or sold during the Class Period, including the dates and the number of Equinix common shares purchased or acquired. The Notice also provides contact information for Lead Counsel, as well as the postal address for the Court. Finally, the Notice incorporates the suggested language regarding objections from the *Procedural Guidance*. *Id.*, at 10.

### E.    Guidance 6: Attorneys' Fees and Expenses

Lead Counsel's intended request for attorneys' fees and expenses is set forth in §IV.C.3 of the Preliminary Approval Memorandum.

### F.    Guidance 7: Service Awards

None are being sought here.

### G.    Guidance 8: *Cy Pres* Awardees

The Settling Parties propose the Council of Institutional Investors ("CII") as the designated recipient for any *de minimis* balance remaining after all reallocations are completed. *See* Stipulation, ¶5.10. CII satisfies the "substantial nexus" test, since it "bears a substantial nexus to the interests of the class members," *In re Google Location Hist. Litig.*, 2024 WL 1975462, at *12 (N.D. Cal. May 3, 2024), and complements the objectives of the federal securities laws. H.R. Conf. Rep. No. 104-369, at 31 (1995) (Congress noted that the broader purpose of the federal securities laws is "to protect investors and to maintain confidence in the securities markets, so that our national savings, capital formation and investment may grow for the benefit of all Americans."). "CII is a leading voice for effective corporate governance, strong shareowner rights and sensible financial regulations that foster fair, vibrant capital markets." *See* cii.org/about.

### H.    Guidance 9: Proposed Timeline

Lead Plaintiff proposes the following schedule for notice, Final Approval Hearing, and related dates:

| Event | Deadline for Compliance |
|---|---|
| Deadline to commence mailing the Summary Notice to potential Class Members and posting of the Notice and Proof of Claim (the "Notice Date") | No later than 21 calendar days following entry of the Preliminary Approval Order (Preliminary Approval Order, ¶10) |
| Publication of the Summary Notice | No later than 7 calendar days following the Notice Date (Preliminary Approval Order, ¶10) |
| Deadline for filing papers in support of the Settlement, the Plan, and application for attorneys' fees and expenses | 21 calendar days prior to the objection and opt-out deadline (Preliminary Approval Order, ¶21) |
| Deadline for requests for exclusion or objections | 21 calendar days prior to the Final Approval Hearing (Preliminary Approval Order, ¶¶17, 19) |
| Deadline for submission of reply papers in support of the Settlement, the Plan, and application for attorneys' fees and expenses | 7 calendar days prior to the Final Approval Hearing (Preliminary Approval Order, ¶21) |
| Proof of Claim submission deadline | 90 calendar days after the Notice Date (Preliminary Approval Order, ¶14(a)) |
| Date for the Final Approval Hearing | At least 100 days after entry of the Preliminary Approval Order (Preliminary Approval Order, ¶2) |

I.    **Guidance 10: Class Action Fairness Act**

Although the CAFA statute is unclear whether notice is required in a securities class action settlement, Defendants have indicated that they will provide such notice.