ROBBINS GELLER RUDMAN
  & DOWD LLP
SHAWN A. WILLIAMS (213113)
DANIEL J. PFEFFERBAUM (248631)
HADIYA K. DESHMUKH (328118)
HAILEY S. ZANUTTO (358143)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
shawnw@rgrdlaw.com
dpfefferbaum@rgrdlaw.com
hdeshmukh@rgrdlaw.com
hzanutto@rgrdlaw.com

Lead Counsel for Lead Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNIFORMED SANITATIONMEN'S ASSOCIATION COMPENSATION ACCRUAL FUND,<br><br>      Plaintiff,<br><br>vs.<br><br>EQUINIX, INC., et al.,<br><br>      Defendants. | Case No. 3:24-cv-02656-VC<br><br>CLASS ACTION<br><br>DECLARATION OF PETER CRUDO REGARDING NOTICE AND ADMINISTRATION<br><br>DATE:  September 4, 2025<br>TIME:  2:00 p.m. (via Zoom)<br>JUDGE: Honorable Vince Chhabria<br>CTRM: 4, 17th floor |

I, PETER CRUDO, declare and state as follows:

1. I am an Executive Vice President at Verita Global ("Verita"), located at 1 McInnis Parkway, Suite 250, San Rafael, California 94903. I make this declaration based on personal knowledge, and if called to testify I could and would do so competently.

2. At the request of Lead Counsel, Robbins Geller Rudman & Dowd LLP, I am providing this declaration to give the Court and the parties to the above-captioned action further information about the procedures and methods that will be used to provide notice of the proposed Settlement to the investors who make up the Class, and the administration of the claims process.

3. Verita has been retained by Lead Counsel, subject to Court approval, to provide notice and claims administration services in the above-captioned action. The Class consists of all Persons who purchased or otherwise acquired Equinix, Inc. ("Equinix") common stock between May 3, 2019 and March 24, 2024, inclusive, and are not otherwise excluded from the Class.

4. As background, Verita has implemented successful claims administration programs in more than a thousand securities class actions during our more than four decades as an administrator. Our experience includes many of the largest and most complex settlement administrations of both private litigation matters and of actions brought by government securities regulators. More information on Verita's experience can be found on its website at www.VeritaGlobal.com.

5. Verita and affiliated entities have been appointed as the notice and/or claims administrator in some 400 notice or settlement administrations over the past 2 years. In 45 of those matters, Robbins Geller was lead or co-lead counsel.

6. The proposed notice plan in this matter uses procedures that have been designed to provide extremely effective direct mail notification to every investor who is a member of the Class and who can be identified with reasonable effort. In addition, direct email notification will be

provided to hundreds of financial institutions that regularly monitor proposed securities class action settlements.  By themselves, the proposed direct mail and email notification will reach an extremely high percentage of the Class.  All persons and entities identified as potential Class Members will be sent the Summary Notice of Proposed Settlement of Class Action ("Summary Notice"), which will direct potential Class Members to the Settlement website to access the Notice of Pendency and Proposed Settlement of Class Action ("Notice") and Proof of Claim and Release form ("Claim Form"), which will include instructions for claim submission, objecting to any aspect of the Settlement, and requesting exclusion from the Class.  The proposed notice plan also calls for publication of the Summary Notice in a national newspaper read by securities investors, as well as its placement on a national business newswire service.  Details of the complete proposed notice plan are outlined below.

7.      If Verita is appointed by the Court as Claims Administrator, and subject to the Court's approval of the notice plan set forth in the [Proposed] Order Preliminarily Approving Settlement and Providing for Notice ("Notice Order"), Verita will initially send a copy of the Summary Notice by First-Class Mail (or email, to the extent email addresses are provided) to all persons and entities identified as potential Class Members by Equinix's stock transfer agent.  The stock transfer agent will only have the contact information for the small number of investors that hold their securities in their own names.  These investors typically make up a very small percentage of a class, as the vast majority of investors hold their securities through a broker, bank, or other financial institution, and do so in what is known colloquially as "street name."  Under the system of street name ownership, institutions act as the record holders for investors who are the beneficial owners of the securities.  In Verita's experience, shareholders who hold their securities in their own name, and are therefore known to the stock transfer agent, typically make up less than 5% of a class in a typical securities settlement.

8. In order to obtain the contact information for investors that hold their securities in street name, Verita and other administrators use a procedure designed to obtain that information from the brokers, banks, and other institutions (the "Nominee Holders") that actually hold the securities for the benefit of their clients. In the more than 40 years that Verita has been notifying class members of actions involving publicly-traded securities, Verita has found the majority of potential class members hold their securities in street name and are reached through the Nominee Holders.

9. For this matter, Verita will send the Summary Notice and appropriate cover letter to each entity included on a proprietary list of approximately 255 Nominee Holders. This list also includes a group of firms and institutions who have requested notification on every case involving publicly-traded securities and is contained in a database created, maintained, and updated as necessary by Verita. In Verita's experience, the institutions included in this database represent a significant majority of the beneficial holders of the securities in most settlements involving publicly-traded companies.

10. Verita will also send the Summary Notice and appropriate cover letter to each financial institution registered with the U.S. Securities and Exchange Commission ("SEC") as a potential Nominee Holder. There are approximately 4,415 institutions on that list, which changes from time to time and is, therefore, periodically updated. The cover letter accompanying the Summary Notice will notify the Nominee Holders of the pendency of this action as a class action and of the proposed Settlement and inform them of their obligation to either provide to Verita the names and addresses (and email addresses where available) of their clients who may be Class Members or request copies of the Summary Notice to provide directly to their customers and clients.

11. Verita has long-standing relationships with all of the primary Nominee Holders, and they are accustomed to providing us with information regarding their clients from their records and obtaining reimbursement for doing so. Verita will provide several supplemental notification letters to any Nominee Holder who does not respond to the initial request for potential Class Member contact information.

12. Verita will promptly send the Summary Notice to all potential Class Members identified by Nominee Holders. Verita will also send copies of the Summary Notice directly to Nominee Holders who indicate that they will directly forward the documents to their customers and clients who may be Class Members.

13. All name and address (and email address) data obtained by Verita will be reviewed to identify and eliminate exact duplicates and incomplete data prior to mailing. Physical addresses will be checked against the United States Postal Service's National Change of Address database to identify address changes and obtain current mailing addresses where available. Any Summary Notices that are returned as undeliverable mail will be reviewed to determine if an alternative or updated address is available from the Postal Service, and will be re-mailed to the updated or alternative address. In cases where no address is available from the Postal Service, Verita will attempt to obtain updated or alternative address information from private databases, and will re-mail the Summary Notice if such information is available.

14. Verita will supplement the direct mailing program described above by publishing the Summary Notice in *The Wall Street Journal*. The Summary Notice will also be posted with *Business Wire*, an online newswire service, where it will be available for a month. News outlets often use posted notices as the basis for their own stories about litigation settlements involving publicly-traded companies, thereby creating added awareness of the proposed Settlement among investors.

15. Verita will also cause the Summary Notice, Notice, and Claim Form to be published by the Depository Trust Corporation ("DTC") on the DTC Legal Notice System ("LENS"). LENS enables participating banks and brokers to review the documents and directly contact the Claims Administrator to obtain copies of the Summary Notice for their clients who may be Class Members.

16. The Summary Notice, Notice, and Claim Form will also be provided electronically to approximately 325 institutions that monitor securities class actions for their investor clients and regularly act on their behalf in these matters.

17. Throughout the notification and claims processing period, Verita will maintain a toll-free number to accommodate potential Class Members' inquiries.

18. Verita will also establish and maintain a settlement-specific website where key documents will be posted, including the Stipulation of Settlement, the Notice and Claim Form, the executed Notice Order, and any other documents that the parties or the Court require to be posted. The website will also provide summary information regarding the case and Settlement and highlight important dates, including the date of the Settlement approval hearing and any changed deadlines. All posted documents will be available for downloading from the website.

19. Based on our experience, we estimate that the proposed notice program will provide notice to more than 95% of the investors that are potential Class Members. Because the Notice directs the cooperation of Nominee Holders and provides for the reimbursement of their costs of doing so, we have experienced and continue to anticipate a high level of compliance from those institutions, many of which have developed regular systems for providing the required information.

20. The procedures proposed here have proven extremely effective at compiling a very comprehensive list of potential class members and providing notice to those potential class

DECLARATION OF PETER CRUDO REGARDING NOTICE & ADMINISTRATION - 3:24-cv-02656-VC
- 5 -

members in thousands of securities class action matters prior to this case. Substantially similar notice plans have been approved by numerous courts as being the best notice practicable under the circumstances. Verita will, of course, provide a reporting declaration outlining the results of the implemented notice plan and the number of hard copy notices that are ultimately delivered and will do so prior to, or in conjunction with, Lead Plaintiff's request that the Settlement be finally approved.

21. Because of the street name system under which most securities are held, even defendant Equinix does not know the identity of the vast majority of its shareholders, and it is usually not possible to meaningfully project the total number of class members prior to implementing the notice plan. However, by taking certain information regarding the number of outstanding Equinix common shares during the proposed class period and comparing that to similar information collected in other cases Verita has administered, we estimate that we will send approximately 150,000 Summary Notices to potential Class Members and other Nominees.

22. Because this matter involves the purchase and sale of securities, which is protected and private financial information held by a large number of different brokerages, custodians, and other financial institutions, a claims process is necessary to gather the required information regarding each claimant's purchases, acquisitions, sales, and holdings of Equinix common stock during the periods relevant to the proposed Plan of Allocation. This transaction information will then be used to evaluate the eligibility of each claim to receive any distribution from the Settlement.

23. There are three typical ways that a claim may be submitted to Verita in securities settlements such as this: a claimant may submit a Claim Form and supporting documents by mail, a claimant may submit a Claim Form and supporting documents via an interactive service provided on the Settlement website, or a financial institution or other third party who has the authority to do

so may file claims on behalf of its clients in electronic spreadsheet format. In our experience, the vast majority of claims, typically at least 80%, are filed by institutions or third-party services which submit claims on behalf of their clients who may be class members, removing the burden from those claimants to file on their own behalf.

24. A claim may be determined ineligible for recovery for various reasons related to the overall completeness of the claim and the claimant or transaction information as presented. For example, where the Claim Form did not include any purchases or acquisitions of Equinix common stock during the relevant period, where calculation of the claim under the Plan of Allocation did not result in a recognized loss, or where the beneficial owner as presented was determined to be insufficient or otherwise ineligible, the claim will be deemed ineligible for recovery and claimants are so advised.

25. In addition to making these determinations, Verita also reviews claims for deficiencies related to specific missing or incorrect information which may be resolved with further information; for example, where a claim is missing supporting documentation, lacking a signature, appears to be missing information regarding transactions or holdings, or presents transaction information which does not match the known history of the stock. If those deficiencies can be corrected by an analyst on review, some of these claims may result in a different loss determination and move into eligible status. Furthermore, Verita will typically waive deficiencies deemed to be insignificant, which may include, but is not limited to, deficiencies which impact only the portion of the claim which calculates no recognized loss, and partially or undocumented claims, partial or missing signatures, and other immaterial deficiencies where the loss of the claim falls below certain recognized loss amount thresholds.

26. Deficiencies will be addressed during the normal course of the administration and claimants with deficient Claim Forms will be provided an opportunity to cure these deficiencies

prior to distribution of the Settlement proceeds. In addition, rejected claimants will be notified of the rejection of their claim and will be provided an opportunity to furnish additional information which may validate the claim or request more information about the reason the claim is rejected prior to distribution of the Settlement proceeds. Claimants who furnish additional information which remains insufficient or who request further review by the Claims Administrator of their rejected claim and who remain dissatisfied with the determination made by the Claims Administrator will also be given instructions for further appealing adverse determinations to the Court to obtain a final determination for the claim.

27. Based on our experience with securities settlements of similar size and involving companies with similar market capitalizations and numbers of shareholders, we estimate that we may receive approximately 37,500 claims and would estimate administering the notice, claims processing, and settlement distribution aspects of this proposed Settlement will generate professional services fees and expenses of approximately $858,000. The estimate includes expenses related to printing and mailing the Summary Notice but does not account for expenses which may be incurred in conjunction with requests to mail copies of the Notice and Claim Form. This estimate also includes the expenses of the Nominee Holders incurred in complying with the request for client information or disseminating the Summary Notice to clients as allowed by law. As part of the outreach process described in paragraphs 8-13, Nominee Holders will be advised that they may seek reimbursement of their reasonable expenses actually incurred in gathering and forwarding the names and addresses of beneficial owners to the Claims Administrator, or forwarding the Notice to beneficial owners via that process or through email, up to a maximum of $0.03 per record, plus actual cost of postage (if applicable), by providing the Claims Administrator with proper documentation supporting the expenses for which reimbursement is sought. In our experience, the notice process and claims process outlined above are consistent with those

undertaken in other securities settlements of similar size and complexity, and are extremely effective in administering settlements of securities class actions.

28. Verita maintains a robust and comprehensive security program designed to ensure the protection and secure handling of client data. Verita acts as a data processer and will receive class member data through secure means, such as secure FTP. All data provided to Verita will be used for purposes of the Settlement as directed by the Stipulation of Settlement and the parties and will be used solely for settlement implementation and no other purpose.

29. Verita's Information Security Policy Framework is aligned to ISO/IEC 27002:2013 which is reviewed on an annual basis and communicated to all employees through a comprehensive training program.

30. Verita maintains a number of corporate governance policies that reflect the manner in which it does business, including an employee Code of Conduct that outlines the professional, responsible, and ethical guidelines that govern employee conduct. These policies are available on our website.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed this 15th day of July, 2025, at San Rafael, California.



PETER CRUDO