ROBBINS GELLER RUDMAN
  & DOWD LLP
SHAWN A. WILLIAMS (213113)
DANIEL J. PFEFFERBAUM (248631)
HADIYA K. DESHMUKH (328118)
HAILEY S. ZANUTTO (358143)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: 415/288-4545
shawnw@rgrdlaw.com
dpfefferbaum@rgrdlaw.com
hdeshmukh@rgrdlaw.com
hzanutto@rgrdlaw.com

Lead Counsel for Lead Plaintiff

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNIFORMED SANITATIONMEN'S ASSOCIATION COMPENSATION ACCRUAL FUND,<br><br>                    Plaintiff,<br><br>   vs.<br><br>EQUINIX, INC., et al.,<br><br>                  Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 3:24-cv-02656-VC<br><br><u>CLASS ACTION</u><br><br>LEAD PLAINTIFF'S NOTICE OF MOTION, MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF PLAN OF ALLOCATION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF<br><br>DATE:   December 18, 2025<br>TIME:    2:00 p.m. (via Zoom)<br>CTRM:  4, 17th Floor<br>JUDGE: Hon. Vince Chhabria |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ...................................................................................1

STATEMENT OF ISSUES TO BE DECIDED ........................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ...........................................................1

I.      INTRODUCTION .......................................................................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND...................................................3

III.    STANDARDS FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENTS...........................................................................................................6

     A.    Class Certification Remains Appropriate ...................................................6

     B.    The Settlement Warrants Final Approval ...................................................6

     C.    The Proposed Settlement Satisfies the Requirements of Rule 23(e)(2)................8

          1.    Rule 23(e)(2)(A): Plaintiff and its Counsel Have Adequately
Represented the Class ..................................................................8

          2.    Rule 23(e)(2)(B): The Proposed Settlement Was Negotiated at
Arm's Length After Mediation with an Experienced Mediator.................8

          3.    Rule 23(e)(2)(C)(i): The Proposed Settlement Is Adequate
Considering the Costs, Risk, and Delay of Trial and Appeal ....................9

               a.    The Costs and Risks of Trial and Appeal Support Approval
of the Settlement ....................................................................10

               b.    The Proposed Settlement Eliminates the Additional Cost
and Delay of Continued Litigation .................................................12

          4.    Rule 23(e)(2)(C)(ii): The Proposed Method for Distributing Relief
Is Effective ..............................................................................13

          5.    Rule 23(e)(2)(C)(iii): Attorneys' Fees ......................................................14

           6.    Rule 23(e)(2)(C)(iv): Other Agreements ....................................................14

          7.    Rule 23(e)(2)(D): The Proposed Plan of Allocation Treats Class
Members Equitably.....................................................................15

     D.    The Remaining Ninth Circuit Factors Are Satisfied............................................16

          1.    Discovery Completed and Stage of the Proceedings ...............................16

          2.    Lead Counsel Views This Good-Faith Settlement as Fair,
Reasonable, and Adequate ..........................................................16

**Page**

3.     The Positive Reaction of Class Members to the Settlement ......................17

4.     The Settlement Amount ............................................................................17

5.     The Risk of Maintaining Class Certification .............................................18

IV.     THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION............................18

V.     NOTICE TO THE CLASS SATISFIES DUE PROCESS ................................................19

VI.     CONCLUSION..............................................................................................................20

# TABLE OF AUTHORITIES

Page

**CASES**

*Baron v. HyreCar Inc.*,
    2024 WL 3504234 (C.D. Cal Jul 19, 2024).................................................................13

*Campbell v. Facebook, Inc.*,
    951 F.3d 1106 (9th Cir. 2020) ........................................................................................6

*Cheng Jiangchen v. Rentech, Inc.*,
    2019 WL 5173771 (C.D. Cal. Oct. 10, 2019)..................................................................8

*Churchill Vill., L.L.C. v. Gen. Elec.*,
    361 F.3d 566 (9th Cir. 2004) ......................................................................................7, 9

*Class Plaintiffs v. City of Seattle*,
    955 F.2d 1268 (9th Cir. 1992) ......................................................................................18

*Davis v. Yelp, Inc.*,
    2022 WL 21748777 (N.D. Cal. Aug. 1, 2022) ..............................................................12

*Destefano v. Zynga, Inc.*,
    2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ................................................................11

*Dura Pharms., Inc. v. Broudo*,
    544 U.S. 336 (2005)......................................................................................................10

*Fleming v. Impax Lab'ys Inc.*,
    2022 WL 2789496 (N.D. Cal. July 15, 2022)......................................................6, 17, 18, 20

*Gudimetla v. Ambow Educ. Holding*,
    2015 WL 12752443 (C.D. Cal. Mar. 16, 2015).............................................................13

*Hampton v. Aqua Metals, Inc.*,
    2021 WL 4553578 (N.D. Cal. Oct. 5, 2021)..................................................................15

*Hayes v. MagnaChip Semiconductor Corp.*,
    2016 WL 6902856 (N.D. Cal. Nov. 21, 2016) ..............................................................20

*Hefler v. Wells Fargo & Co.*,
    2018 WL 6619983 (N.D. Cal. Dec. 18, 2018),
    *aff'd sub nom.*, *Hefler v. Pekoc*,
    802 F. App'x 285 (9th Cir. 2020) ...................................................................................9

*Hsu v. Puma Biotechnology, Inc.*,
    No. 8:15-cv-00865-DOC-SHK, ECF 913 (C.D. Cal. Aug. 3, 2022) ......................................13

**Page**

*In re Alphabet, Inc. Sec. Litig.*,
  2024 WL 4354988 (N.D. Cal. Sept. 30, 2024) ........................................................................6

*In re BofI Holding, Inc. Sec. Litig.*,
  2022 WL 9497235 (S.D. Cal. Oct. 14, 2022) .........................................................................15

*In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Pracs., & Prods. Liab. Litig.*,
  2019 WL 2554232 (N.D. Cal. May 3, 2019) ...........................................................................7

*In re Hewlett-Packard Co. Sec. Litig.*,
  2015 WL 13917012 (C.D. Cal. Nov. 9, 2015) ........................................................................14

*In re Hyundai & Kia Fuel Econ. Litig.*,
  926 F.3d 539 (9th Cir. 2019) ....................................................................................................8

*In re Immune Response Sec. Litig.*,
  497 F. Supp. 2d 1166 (S.D. Cal. 2007) ..................................................................................12

*In re ImmunityBio, Inc. Sec. Litig.*,
  2025 WL 1686263 (S.D. Cal. June 16, 2025) ..........................................................................9

*In re Lyft, Inc. Sec. Litig.*,
  2022 WL 17740302 (N.D. Cal. Dec. 16, 2022) ......................................................................14

*In re Lyft Inc. Sec. Litig.*,
  2023 WL 5068504 (N.D. Cal. Aug. 7, 2023) ..........................................................................16

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) ............................................................................15, 17

*In re Online DVD-Rental Antitrust Litig.*,
  779 F.3d 934 (9th Cir. 2015) ..................................................................................................15

*In re Stable Rd. Acquisition Corp.*,
  2024 WL 3643393 (C.D. Cal. Apr. 23, 2024) ...................................................................16, 18

*In re Veritas Software Corp. Sec. Litig.*,
  496 F.3d 962 (9th Cir. 2007) ..................................................................................................19

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
  895 F.3d 597 (9th Cir. 2018) ....................................................................................................6

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
  2020 WL 4212811 (N.D. Cal. July 22, 2020),
  *aff'd*, 2022 WL 2304236 (9th Cir. June 27, 2022) ...............................................................13

**Page**

*Khoja v. Orexigen Therapeutics, Inc.*,
    2021 WL 5632673 (S.D. Cal. Nov. 30, 2021) .......................................................................16

*Longo v. OSI Sys., Inc.*,
    2022 U.S. Dist. LEXIS 158606 (C.D. Cal. Aug. 31, 2022).................................................9, 15

*Mauss v. NuVasive, Inc.*,
    2018 WL 6421623 (S.D. Cal. Dec. 6, 2018)........................................................................19

*Mendoza v. Hyundai Motor Co.*,
    2017 WL 342059 (N.D. Cal. Jan. 23, 2017) .........................................................................7

*Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of S.F.*,
    688 F.2d 615 (9th Cir. 1982) ...........................................................................................6, 9

*Redwen v. Sino Clean Energy, Inc.*,
    2013 WL 12303367 (C.D. Cal. July 9, 2013) .....................................................................10

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ...........................................................................8, 10, 16, 19

*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) .............................................................................................13

*Vataj v. Johnson*,
    2021 WL 1550478 (N.D. Cal. Apr. 20, 2021) ....................................................................18

*Vataj v. Johnson*,
    2021 WL 5161927 (N.D. Cal. Nov. 5, 2021) ......................................................................16

*Vinh Nguyen v. Radient Pharms. Corp.*,
    2014 WL 1802293 (C.D. Cal. May 6, 2014) ......................................................................12

**STATUTES, RULES, AND REGULATIONS**

15 U.S.C.
    §78j(b).........................................................................................................................3, 4, 10
    §78t(a).............................................................................................................................3, 4

**Page**

Federal Rules of Civil Procedure
    Rule 23(c)(1) .................................................................................................... 18
    Rule 23(c)(2)(B) ............................................................................................... 19
    Rule 23(e) ...................................................................................................... 1, 6
    Rule 23(e)(1)(B) ............................................................................................... 19
    Rule 23(e)(2) ................................................................................................. 7, 8
    Rule 23(e)(2)(A) ................................................................................................. 8
    Rule 23(e)(2)(B) ................................................................................................. 8
    Rule 23(e)(2)(C) ................................................................................................. 9
    Rule 23(e)(2)(C)(i) ............................................................................................. 9
    Rule 23(e)(2)(C)(ii) .......................................................................................... 13
    Rule 23(e)(2)(C)(iii) ......................................................................................... 14
    Rule 23(e)(2)(C)(iv) ......................................................................................... 14
    Rule 23(e)(2)(D) ............................................................................................... 15
    Rule 23(e)(3) ...................................................................................................... 7

## SECONDARY AUTHORITIES

Laarni Bulan and Eric Tam,
    *Securities Class Action Settlements; 2024 Review & Analysis*
    (Cornerstone Research 2025) ........................................................................ 1, 17

**NOTICE OF MOTION AND MOTION**

TO:    ALL PARTIES AND THEIR ATTORNEYS OF RECORD

PLEASE TAKE NOTICE THAT on December 18, 2025, at 2:00 p.m., via Zoom videoconference, before the Honorable Vince Chhabria of the United States District Court, Northern District of California, Uniformed Sanitationmen's Association Compensation Accrual Fund ("Lead Plaintiff" or "Plaintiff") will and hereby does respectfully move the Court, pursuant to Federal Rule of Civil Procedure 23(e), for entry of a judgment granting final approval of the proposed Settlement and entry of an order granting approval of the proposed Plan of Allocation.

This Motion is based on the following Memorandum of Points and Authorities, as well as the accompanying Declaration of Daniel J. Pfefferbaum in Support of Final Approval of Class Action Settlement; Approval of Plan of Allocation; and an Award of Attorneys' Fees and Expenses ("Pfefferbaum Declaration" or "Pfefferbaum Decl."), with attached exhibits, the Stipulation of Settlement, all prior pleadings and papers in this Litigation, the arguments of counsel, and such additional information or argument as may be required by the Court.

A proposed Final Judgment and Order of Dismissal with Prejudice and proposed Order granting approval of the proposed Plan of Allocation will be submitted with Lead Plaintiff's reply submission on December 11, 2025, after the December 1, 2025 deadline for Class Members to object to the Settlement or Plan of Allocation has passed.

**STATEMENT OF ISSUES TO BE DECIDED**

1.      Whether the Court should grant final approval of the Settlement.

2.      Whether the Court should approve the Plan of Allocation.

3.      Whether the notice satisfied Rule 23 and due process.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

After a year of hard-fought litigation, the $41.5 million all-cash Settlement before the Court for approval is an excellent result for the Class.[1]  The Settlement is four times the median settlement amount for securities class action cases settled in the Ninth Circuit in the past decade, avoids the substantial risks and delays of continued litigation through class certification, summary judgment and trial, and falls well within the range of settlements that courts in this Circuit regularly approve.[2] Given the risks of proceeding and the result obtained, the Settlement secures a highly favorable recovery for the Class and warrants the Court's approval.

The Settlement was reached only after the proceedings had reached a stage where a careful evaluation of the Litigation and the propriety of Settlement could be (and was) made to resolve the Litigation.  For example, Lead Plaintiff had, among other things: (i) conducted an extensive investigation that included reviewing available public information about Equinix and interviewing former Equinix employees; (ii) filed a detailed amended complaint (the "Amended Complaint"); (iii) successfully defeated, in part, Defendants' motion to dismiss the Amended Complaint; (iv) negotiated for and engaged in the review and analysis of tens of thousands of pages of documents produced by Defendants and numerous nonparties in discovery; (v) deposed an Equinix corporate representative pursuant to Rule 30(b)(6); (vi) responded to Defendants' discovery requests; (vii) moved to certify the Class, supported by expert opinion; (viii) prepared a detailed mediation statement; and (ix) participated in a mediation session on June 4, 2025, with Miles Ruthberg of Phillips ADR Enterprises culminating in a "mediator's proposal" accepted by the Parties.  As a result

---

[1]    The terms of the Settlement are set forth in the Stipulation of Settlement dated July 15, 2025 (ECF 103-2) (the "Stipulation").  All capitalized terms not defined herein shall have the same meaning set forth in the Stipulation, in Lead Plaintiff's Unopposed Motion for Preliminary Approval of Proposed Settlement and Memorandum of Points and Authorities in Support Thereof (ECF 103), and in the Pfefferbaum Declaration.  Unless otherwise noted, all emphasis is added and all internal citations are omitted.

[2]    *See* Ex. D to the Pfefferbaum Decl. (Laarni Bulan and Eric Tam, *Securities Class Action Settlements; 2024 Review & Analysis*, at 20 (Cornerstone 2025), and also available at https://www.cornerstone.com/wp-content/uploads/2025/03/Securities-Class-Action-Settlements-2024-Review-and-Analysis.pdf (the "Cornerstone Report")).

of these substantial litigation and settlement efforts, Lead Plaintiff and Lead Counsel had a thorough understanding of the relative strengths and weaknesses of the Class's claims and the propriety of the Settlement.

While Lead Counsel believes the Class's claims are meritorious, from the outset and throughout the Litigation, Defendants adamantly denied liability and asserted they possessed absolute defenses to the Class's claims. Defendants successfully obtained dismissal of Lead Plaintiff's scheme claims concerning overselling of power capacity at Equinix's datacenters, leaving only the AFFO manipulation claims, and substantially reducing Lead Plaintiff's recoverable damages. Discovery efforts to support the surviving accounting claims was under way. Yet Defendants were prepared to aggressively assert their defenses to falsity, materiality, scienter, loss causation, and damages, and continued to put up hurdles concerning the relevance of certain discovery requests in an already complex case focused on a non-GAAP accounting metric. Even prevailing at summary judgment and trial would not have assured recovery, as Defendants would have likely appealed any favorable ruling for the Class. Moreover, even if Lead Plaintiff had prevailed, in full or in part, on its surviving claims, there was a significant risk that any recovery achieved would not be meaningfully larger than the Settlement. Thus, the result is an excellent settlement that Lead Plaintiff and Lead Counsel firmly believe is very favorable to the Class and in its best interest.

Additionally, Lead Plaintiff – an exemplar of the type of institutional investor Congress envisioned serving in that role when passing the PSLRA – fully supports the Settlement and considers it fair and reasonable.[3] The Class's reaction to date similarly reflects approval of the Settlement. Notice was provided to approximately 399,600 potential Class Members pursuant to the Preliminary Approval Order, commencing September 25, 2025. *See* Declaration of Ross D. Murray Regarding: (A) Notice Dissemination; (B) Publication; (C) Establishment of Call Center Services and Website; (D) Proofs of Claim Received; and (E) Report on Exclusions and Objections ("Murray

---

[3]    *See* Declaration of Dennis Shock on Behalf of Uniformed Sanitationmen's Association Compensation Accrual Fund ("Accrual Fund Decl."), attached as Ex. A to the Pfefferbaum Declaration.

Decl."), ¶¶4-11, attached as Ex. B to the Pfefferbaum Decl. While the December 1, 2025 deadline to object to the Settlement and Plan of Allocation has not yet passed, no objections or requests for exclusion have been received to date.[4]

Lead Plaintiff also requests that the Court approve the proposed Plan of Allocation, which was detailed in the long-form Notice. The Plan of Allocation governs how claims will be calculated and how Settlement proceeds will be distributed among Authorized Claimants. The Plan of Allocation is based on the analysis of Lead Plaintiff's damages expert and subjects all Class Members to the same formulas for calculating out-of-pocket damages, *i.e.*, the difference between what Class Members paid for their Equinix common stock during the Class Period and what they would have paid had the alleged misstatements and omissions not been made.

In short, the $41.5 million Settlement and the Plan of Allocation are fair and reasonable and should be approved by the Court.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

The Litigation brings claims against Equinix and its executive officers, Charles Meyers and Keith D. Taylor (together, "Defendants"), for violations of §§10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"). Lead Plaintiff alleges that between May 3, 2019, and March 24, 2024, both dates inclusive, Defendants made materially false and misleading statements and omitted material information pertaining to the Company's purported "lighthouse" metric, Adjusted Free Funds from Operations or "AFFO," and engaged in a scheme to defraud investors by overselling the Company's available power capacity at its datacenters. Pfefferbaum Decl., ¶2. Lead Plaintiff alleged that, with respect to AFFO, a non-GAAP metric, Defendants violated the accounting policies they had previously explained to investors by improperly classifying certain maintenance expenses, causing AFFO to be materially overstated. *Id.* Lead Plaintiff alleged that as a result of this misclassification, Equinix beat the AFFO guidance it had provided to investors and

---

[4]    Lead Counsel will address any timely objections in its reply brief, which is due on December 11, 2025.

that Defendants Meyers and Taylor received $150 million in stock bonus awards, which were contingent on meeting certain AFFO targets. *Id.*[5]

With respect to power capacity, Lead Plaintiff alleged that Defendants engaged in a fraudulent scheme to oversell the available power capacity at the Company's datacenters, which created a risk that Equinix could not fulfill its power obligation to customers and limited the Company's ability for future growth. *Id.*, ¶3. Lead Plaintiff further alleged that, as the truth came out through a series of corrective disclosures, Equinix's stock price declined, harming investors.

The initial complaint was filed on May 2, 2024 by Wayne Chan. ECF 1. On August 15, 2024, the Court appointed Uniformed Sanitationmen's Association Compensation Accrual Fund as lead plaintiff and Robbins Geller Rudman & Dowd LLP ("Robbins Geller" or "Lead Counsel") as lead counsel. ECF 42. Following an extensive investigation by Lead Counsel, Lead Plaintiff filed the Amended Complaint on September 12, 2024, asserting claims under §§10(b) and 20(a) of the Exchange Act against all Defendants. ECF 43.

On October 10, 2024, Defendants moved to dismiss the Amended Complaint and for a request for judicial notice. ECF 54-55. Lead Plaintiff opposed Defendants' motions on October 31, 2024 (ECF 56-57), and Defendants filed their replies on November 19, 2024 (ECF 58-59). Following oral argument, on January 6, 2025, the Court denied in part and granted in part the motion to dismiss. ECF 67 ("MTD Order"). The MTD Order found that Lead Plaintiff adequately alleged that Defendants overstated the Company's reported non-GAAP metric AFFO and its drivers. The MTD Order dismissed Lead Plaintiff's claims concerning Defendants' alleged scheme to inflate Equinix's results by overselling its power capacity at its datacenters for failure to allege materiality.

Thereafter, the Parties engaged in a Rule 26(f) conference, made initial disclosures, and negotiated a protective order (ECF 81) and an ESI discovery protocol (ECF 89). Lead Plaintiff aggressively pursued discovery from Defendants, serving requests for production of documents, engaging in extended negotiations over the scope of those requests, as well as appropriate custodians and search terms. Lead Plaintiff propounded interrogatories on the Defendants concerning their

---

[5]    Meyers and Turner also sold a significant portion of their personal Equinix holdings during the Class Period.

potential defenses and deposed Equinix via a corporate representative pursuant to Federal Rule of Civil Procedure 30(b)(6). Lead Plaintiff also sought documents from 16 nonparties, including the Company's auditor, PricewaterhouseCoopers, and numerous securities analysts that covered the Company during the Class Period. Notably, Plaintiff obtained from Hindenberg Research the transcripts of all its interviews of former employees that were taken in connection with its investigation of Equinix. In total, Lead Plaintiff obtained and analyzed 78,812 pages of documents.

Lead Plaintiff was also the target of discovery related to its suitability to be a Class Representative. Lead Plaintiff objected and responded to both document discovery requests and interrogatories propounded by the Defendants and produced responsive documents.

On April 17, 2025, Lead Plaintiff filed its Motion to Certify Class, Appoint Class Representative and Appoint Class Counsel, which was supported by expert testimony on the issues of market efficiency and damages methodology. ECF 90. Defendants filed their opposition on May 29, 2025. ECF 94. An agreement to settle this Litigation was reached prior to the filing of Lead Plaintiff's reply.

During the case management conference held on January 24, 2025, the Court directed the Parties to complete a mediation prior to June 6, 2025. ECF 82 at 4:13-15. On June 4, 2025, the Parties, their counsel, and representatives of Defendants' D&O insurance carriers attended an all-day, in-person mediation with Mr. Ruthberg. Prior to the mediation, the Parties submitted lengthy mediation statements and relevant exhibits. Following approximately ten hours of negotiations, the mediation concluded with Mr. Ruthberg making a mediator's proposal of $41.5 million to resolve this Litigation, which both parties accepted the following day. The Parties executed a term sheet documenting their agreement in principle on June 12, 2025, and thereafter proceeded to formally document the proposed Settlement. On July 15, 2025, Lead Plaintiff filed its unopposed motion for preliminary approval of the Settlement. ECF 103.

On August 26, 2025, the Court directed Lead Plaintiff to revise the proposed Preliminary Approval Order and the proposed Notice to ensure that they complied with the Court's standing order. ECF 107. Lead Plaintiff filed revised documents on September 2, 2025. ECF 108. The Court provided edits to the Notice on September 3, 2025. ECF 110. Following a hearing via Zoom

on September 4, 2025, the Court granted Lead Plaintiff's motion for preliminary approval of the Settlement. ECF 112. Notice was sent to the Class beginning on September 25, 2025. *See* Murray Decl., ¶5.

## III.    STANDARDS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS

### A.    Class Certification Remains Appropriate

In granting preliminary approval, the Court found this case appropriate for class certification for settlement purposes, and appointed Lead Plaintiff as class representative and Lead Counsel as class counsel. ECF 112 at ¶¶6-8. Because nothing has changed since preliminary approval that would undermine the Court's conclusion, class certification for settlement purposes remains appropriate. *See In re Alphabet, Inc. Sec. Litig.*, 2024 WL 4354988, at *4 (N.D. Cal. Sept. 30, 2024); *Fleming v. Impax Lab'ys Inc.*, 2022 WL 2789496, at *4 (N.D. Cal. July 15, 2022).

### B.    The Settlement Warrants Final Approval

The Ninth Circuit recognizes a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1121 (9th Cir. 2020) (citation modified). "Deciding whether a settlement is fair is . . . best left to the district judge." *See In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 895 F.3d 597, 611 (9th Cir. 2018). Courts, however, should not convert settlement approval into an inquiry into the merits, as "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties." *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982); *Alphabet*, 2024 WL 4354988, at *3 ("In reviewing the proposed settlement, a court need not address whether the settlement is ideal or the best outcome, but only whether the settlement is fair, free of collusion, and consistent with plaintiff's fiduciary obligations to the class.").

Federal Rule of Civil Procedure 23(e) requires judicial approval for the settlement of claims brought as a class action and provides "the court may approve [a proposed settlement] only after a

hearing and only on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). To

determine whether a settlement is "fair, reasonable, and adequate," the Court must

> consider[] whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

*Id.*

In addition to the Rule 23(e)(2) considerations, courts in the Ninth Circuit consider the

following factors when examining whether a proposed settlement is fair, reasonable, and adequate:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.[6]

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).[7]

The Court's Preliminary Approval Order assessed the Settlement and found, after a

preliminary review, that it was fair, reasonable, and adequate, subject to further consideration at the

Settlement Hearing. *See* ECF 112 at ¶¶1-2. The Court's conclusion on preliminary approval is

equally true now, as nothing has changed between September 4, 2025 and the present. *See In re*

*Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2019 WL 2554232, at *2

(N.D. Cal. May 3, 2019) ("Those conclusions [drawn at preliminary approval] stand and counsel

equally in favor of final approval now.").

---

[6]    "Because there is no governmental entity involved in this litigation, this [seventh] factor is inapplicable." *Mendoza v. Hyundai Motor Co.*, 2017 WL 342059, at *7 (N.D. Cal. Jan. 23, 2017).

[7]    The Northern District's Procedural Guidance for Class Action Settlements ("Northern District Guidelines"), Final Approval, §1, states that the motion for final approval briefing should include information about the number of undeliverable class notices and claim packets, the number of valid claims, the number of opt outs and objections, and address any objections. The number of undeliverable notices is addressed in the Murray Decl., ¶10, as is the number of opt outs and claim forms received. *Id.*, ¶¶15, 17. Lead Counsel will address any objections, requests for exclusion, and the number of claims received in their reply brief to be filed on December 11, 2025.

### C.    The Proposed Settlement Satisfies the Requirements of Rule 23(e)(2)

#### 1.    Rule 23(e)(2)(A): Plaintiff and its Counsel Have Adequately Represented the Class

Lead Plaintiff and Lead Counsel have adequately represented the Class as required by Rule 23(e)(2)(A).    Lead Counsel is highly qualified and experienced in securities litigation, *see* accompanying Declaration of Daniel J. Pfefferbaum Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Application for Award of Attorneys' Fees and Expenses ("Robbins Geller Decl."), Ex. G, actively pursued the claims of Equinix investors in this Court, and zealously advocated for the Class's best interests throughout the Litigation. *See generally* Accrual Fund Decl.; *Cheng Jiangchen v. Rentech, Inc.*, 2019 WL 5173771, at *5 (C.D. Cal. Oct. 10, 2019) (finding this factor satisfied where lead counsel "has significant experience in securities class action lawsuits"). The Settlement is the result of Lead Counsel's diligent prosecution of this Litigation. *See, e.g.*, *Rentech*, 2019 WL 5173771, at *5 (finding this factor satisfied where lead counsel vigorously pursued plaintiff's claims through multiple rounds of motions to dismiss and amended complaints).

In addition, Lead Plaintiff and Lead Counsel have no interests antagonistic to those of other Class Members; rather, their claims "arise from the same alleged conduct: the purchase of [Equinix] stock at inflated prices based on Defendants' alleged . . . misstatements." *Id.*    Accordingly, Lead Plaintiff shares the common interest in obtaining the largest possible recovery for itself and the Class. *See In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 566 (9th Cir. 2019) ("To determine legal adequacy, we resolve two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'").    This factor weighs in favor of final approval.

#### 2.    Rule 23(e)(2)(B): The Proposed Settlement Was Negotiated at Arm's Length After Mediation with an Experienced Mediator

Rule 23(e)(2)(B) asks whether "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B).    "[The Ninth Circuit] put[s] a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).

The Parties here reached the Settlement only after a mediation session and extensive, hard-fought litigation, including briefing Defendants' motion to dismiss, pursuing discovery, and moving to certify the class. Following negotiations overseen by Mr. Ruthberg, the case was ultimately resolved only when the Parties accepted the mediator's proposal. *See* Pfefferbaum Decl., ¶59. *See also In re ImmunityBio, Inc. Sec. Litig.*, 2025 WL 1686263, at *7 (S.D. Cal. June 16, 2025) (after initial discovery, settlement negotiations included an in-person mediation and mediator's proposal, "evincing that the settlement was reached via non-collusive means"). Moreover, given Lead Plaintiff's significant efforts to pursue the Litigation against an adversary determined to defeat it, there can be no question that counsel "'had a sound basis for measuring the terms of the settlement.'" *Longo v. OSI Sys., Inc.*, 2022 U.S. Dist. LEXIS 158606, at *11 (C.D. Cal. Aug. 31, 2022). These facts demonstrate that the Settlement is the result of arm's-length negotiations and "not the product of fraud or overreaching by, or collusion between, the negotiating parties." *Officers for Just.*, 688 F.2d at 625.

### 3. Rule 23(e)(2)(C)(i): The Proposed Settlement Is Adequate Considering the Costs, Risk, and Delay of Trial and Appeal

Pursuant to Rule 23(e)(2)(C), the Court considers "the costs, risks, and delay of trial and appeal," and the relevant overlapping Ninth Circuit factors address "the strength of the plaintiffs' case" and "the risk, expense, complexity, and likely duration of further litigation." Fed. R. Civ. P. 23(e)(2)(C); *Churchill*, 361 F.3d at 575. While Lead Plaintiff believed its claims have merit and that it would prevail on its surviving claims at class certification and against Defendants' anticipated motion for summary judgment, it nevertheless recognizes the numerous risks and uncertainties in proceeding to trial. In fact, securities class actions "'are highly complex and [litigating] securities class litigation is notably difficult and notoriously uncertain.'" *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *13 (N.D. Cal. Dec. 18, 2018), *aff'd sub nom.*, *Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020). As discussed below, the benefits conferred on Class Members by the Settlement far outweigh the costs, risks, and delay of further litigation, and confirm the adequacy and reasonableness of the Settlement.

### a.    The Costs and Risks of Trial and Appeal Support Approval of the Settlement

To prove liability under §10(b) of the Exchange Act, a plaintiff must establish all elements of the claim, including that the defendants knowingly or recklessly made the materially false and misleading statements and that the material misrepresentations caused investors' losses. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005). Lead Plaintiff would be required to prove each of these elements to prevail, whereas Defendants needed only to succeed on one defense to defeat the entire action. Although Lead Plaintiff is confident that Lead Counsel would be able to prove the remaining allegations, the risk of an unfavorable judgment or verdict was still real. *See Redwen v. Sino Clean Energy, Inc.*, 2013 WL 12303367, at *6 (C.D. Cal. July 9, 2013) ("Courts experienced with securities fraud litigation routinely recognize that securities class actions present hurdles to proving liability that are difficult for plaintiffs to clear.") (citation modified). Moreover, "[i]nevitable appeals would likely prolong the litigation, and any recovery by class members, for years." *Rodriguez*, 563 F.3d at 966.

Defendants advanced several plausible arguments disputing both liability and damages, and already obtained dismissal of the claims alleging overselling of power capacity. Lead Counsel anticipates that Defendants would have advanced the arguments opposing the AFFO claims for the duration of the litigation, including at trial. For example, Defendants had and would continue to forcefully argue that as a non-GAAP accounting metric, Equinix was free to define, re-define and calculate AFFO however it chose, so long as it sufficiently disclosed its methodology to investors. Pfefferbaum Decl., ¶63. Both Lead Plaintiff and Defendants argued at the motion to dismiss stage that Equinix provided investors with multiple, sometimes-conflicting, explanations of the Company's AFFO policies. *Id.* Lead Plaintiff would have to prove that Defendants materially misled investors by knowingly calculating AFFO in a manner inconsistent with the procedures provided to investors; Lead Plaintiff would likely have to make this showing on a transaction-by-transaction basis. *Id.* Additionally, because the allegedly misclassified capital expenditures represented less than 5% of Equinix's total revenue, Lead Plaintiff would have to overcome the

defense that such misclassification could never be deemed material to investors under the applicable accounting standards. *Id.*

Lead Plaintiff also had to overcome Defendants' arguments that the information which it alleged was concealed from investors concerning manipulation of AFFO had in fact already been fully publicly disclosed to investors during the Class Period. *Id.*, ¶64. Defendants contended that the Hindenburg Report did not contain any material new information that was not previously made available to the market by securities analysts or other short-sellers. *Id.* While Lead Plaintiff believes it could adequately counter this argument, it presented a significant risk of proceeding through class certification, summary judgment, and trial. *Id.*

In disputing the requisite element of scienter, *i.e.*, that the statements were knowingly or recklessly false, Defendants would have asserted that, even assuming any of their actions violated any laws, they made good faith attempts to comply with the law and/or had good faith bases to believe their actions were proper under the applicable laws. Arguing that they had not knowingly or intentionally violated any such laws, they likewise would argue they had not knowingly or recklessly made any misstatements, including that their statements were consistent with the accounting policies they described to investors and that they were approved by the Company's auditors and never subject to restatement. Defendants contended that Lead Plaintiff did not allege any particularized facts to support the Company's executives' awareness or knowledge of "the minutia of accounting judgments." Pfefferbaum Decl., ¶65.

To challenge loss causation, Defendants would continue to argue that a series of disclosures made prior to and during the Class Period provided the market with the allegedly concealed information regarding Equinix's accounting practices as it pertained to AFFO. *Id.*, ¶66. Defendants would also continue to argue that the stock price decline that occurred in connection with the Hindenburg Report was due to non-fraud factors – like the overselling of power capacity – as opposed to the fraud factors alleged by Lead Plaintiff. *Id.* "[I]n any securities litigation case, it is difficult for plaintiff to prove loss causation and damages at trial." *Destefano v. Zynga, Inc.*, 2016 WL 537946, at *9 (N.D. Cal. Feb. 11, 2016) (citation modified). Because Defendants had already

targeted loss causation in their motion to dismiss, Lead Plaintiff anticipated facing similar arguments again had litigation proceeded.

Having asserted some variation of each of these substantive arguments in the motion to dismiss and in their opposition to class certification, there is little doubt that Defendants would re-assert such arguments and seek to assemble supporting evidence at summary judgment and trial. Although Lead Plaintiff was pursuing its own evidence to oppose Defendants' anticipated defenses, even if Lead Plaintiff was successful in defeating summary judgment, establishing each element would be difficult and scienter is notoriously "complex and difficult to establish at trial." *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1172 (S.D. Cal. 2007).

As detailed in the Pfefferbaum Declaration, Lead Plaintiff faced a very serious risk to its ability to prove its claims given the hurdles it faced in obtaining discovery. Pfefferbaum Decl., ¶67. Defendants challenged the scope of discovery, including the relevance of certain evidence and the time period for which Defendants and nonparties would be obliged to produce discovery. If Defendants' restrictive view of relevance was accepted by the Court, Lead Plaintiff might not obtain sufficient proof of the securities violations.

Finally, to prove and calculate damages involves "complex analysis, requiring [a] jury to parse divergent positions of expert witnesses in a complex area of the law," rendering "[t]he outcome of that analysis . . . inherently difficult to predict and risky." *Vinh Nguyen v. Radient Pharms. Corp.*, 2014 WL 1802293, at *2 (C.D. Cal. May 6, 2014). Defendants certainly would have challenged Lead Plaintiff's expert's damages calculation, and there is no guarantee that Lead Plaintiff would have successfully proven all or even a part of its claimed damages. The winner of a "'battle of [the] experts'" is unpredictable. *Davis v. Yelp, Inc.*, 2022 WL 21748777, at *4 (N.D. Cal. Aug. 1, 2022). Settlement at this stage eliminates this risk.

### b. The Proposed Settlement Eliminates the Additional Cost and Delay of Continued Litigation

There remained much work for Lead Plaintiff in the Litigation had the Parties not reached the Settlement. For instance, if the Settlement was not reached, the Parties still faced completing document discovery, taking and/or defending many fact and expert depositions, litigating any

discovery disputes that may arise, completing the briefing on class certification, summary judgment, motions to exclude experts, motions *in limine*, and trying the case before a jury.  And even if Lead Plaintiff had prevailed at trial, it would have taken potentially years to resolve any resulting appeals. *See, e.g.*, *Hsu v. Puma Biotechnology, Inc.*, No. 8:15-cv-00865-DOC-SHK, ECF 913 (C.D. Cal. Aug. 3, 2022) (granting final approval of securities class action settlement 2.5 years after a February 4, 2019 jury verdict in plaintiff's favor following trial).

    "By contrast, the Settlement provides . . . timely and certain recovery." *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2020 WL 4212811, at *9 (N.D. Cal. July 22, 2020), *aff'd*, 2022 WL 2304236 (9th Cir. June 27, 2022).  The Settlement at this juncture results in an immediate, substantial, and tangible recovery, without "the cost, complexity and time of fully litigating the case" – key factors in evaluating the reasonableness of a settlement. *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993); *see also Gudimetla v. Ambow Educ. Holding*, 2015 WL 12752443, at *4 (C.D. Cal. Mar. 16, 2015) ("Although the Parties have engaged in multiple motions to dismiss and have amended their Complaint multiple times, Plaintiffs predict that discovery in preparation for potential motions for summary judgment and trial would prove to be risky, costly, and reduce the possible recovery for the Class[,]" while the settlement, by contrast, conferred an immediate and valuable cash benefit to the Class.).  Thus, the Settlement is a far better option for the Class.

### 4.     Rule 23(e)(2)(C)(ii): The Proposed Method for Distributing Relief Is Effective

    Lead Plaintiff and Lead Counsel have also made substantial efforts to notify the Class about the proposed Settlement under Rule 23(e)(2)(C)(ii).  Pursuant to the Preliminary Approval Order, a total of 399,671 Summary Notices were emailed or mailed to potential Class Members and nominees; the Summary Notice was published in *The Wall Street Journal* and transmitted over *Business Wire*; and the website created for this Litigation contains key documents, including the Stipulation, Notice, Proof of Claim, and Preliminary Approval Order.  *See generally* Murray Decl.

    The claims process here is identical to those commonly and effectively used in connection with other securities class action settlements.  *See Baron v. HyreCar Inc.*, 2024 WL 3504234, at *9 (C.D. Cal Jul 19, 2024) ("The Court finds that the effectiveness of the proposed method of

distribution, involving a claims administrator and *pro rata* relief based on a claimant's demonstrable injury, weighs in favor of approving the Proposed Settlement Agreement.") (italics in original). The standard claim form requests the information necessary to calculate a claimant's claim amount pursuant to the Plan of Allocation. The Plan of Allocation, discussed further in §IV below, will govern how claims will be calculated and, ultimately, how funds will be distributed to claimants.[8]

### 5.    Rule 23(e)(2)(C)(iii): Attorneys' Fees

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). As discussed in Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses, and Memorandum of Points and Authorities in Support Thereof ("Fee Memorandum"), submitted herewith, Lead Counsel seeks an award of attorneys' fees of 25% of the Settlement Amount and expenses of $233,757.84, plus interest on both amounts. This is the sole fee and expense request being made in connection with resolving the Litigation, and the first and only time Lead Counsel will be compensated for its efforts. The fee requested is approved by Lead Plaintiff (Accrual Fund Decl., ¶5), comports with the Ninth Circuit benchmark for fee awards in this Circuit, and is justified by the time and diligence expended on prosecuting the Litigation. *See* Fee Memorandum, §III.B.

### 6.    Rule 23(e)(2)(C)(iv): Other Agreements

As stated in Lead Plaintiff's motion for preliminary approval (ECF 103), the Parties have entered into a standard supplemental agreement, which provides that if Class Members opt out of the Settlement such that opt outs from the Class equals or exceeds a certain threshold, Defendants shall have the option to terminate the Settlement. Stipulation, ¶7.3. Again, such agreements are common and do not undermine the propriety of the Settlement. *See, e.g., In re Lyft, Inc. Sec. Litig.*, 2022 WL

---

[8]    Once Notice and Administration Expenses, Taxes, Tax Expenses, and Court-approved attorneys' fees and expenses have been paid from the Settlement Fund, the remaining amount will be distributed pursuant to the Plan of Allocation. *See* Stipulation, ¶5.2. These distributions shall be repeated until the balance remaining in the Settlement Fund is *de minimis. Id.*, ¶5.10. If there are any *de minimis* residual funds that are not feasible or economical to reallocate, Lead Plaintiff proposes that such funds be donated to the Council of Institutional Investors, a nonprofit, nonpartisan association that advocates for effective corporate governance and shareholder rights. ECF 103, App'x A at 4. *See In re Hewlett-Packard Co. Sec. Litig.*, 2015 WL 13917012, at *2 (C.D. Cal. Nov. 9, 2015) (approving Council of Institutional Investors as *cy pres* recipient in securities settlement).

17740302, at *6 (N.D. Cal. Dec. 16, 2022) ("The existence of a termination option triggered by the number of class members who opt out of the settlement does not by itself render the settlement unfair."); *Hampton v. Aqua Metals, Inc.*, 2021 WL 4553578, at *10 (N.D. Cal. Oct. 5, 2021) (same). While the Supplemental Agreement is identified in the Stipulation (Stipulation, ¶7.3), and the nature of the agreement is explained in the Stipulation and here, the terms are properly kept confidential.[9]

### 7.      Rule 23(e)(2)(D): The Proposed Plan of Allocation Treats Class Members Equitably

Pursuant to Rule 23(e)(2)(D), the Plan of Allocation must "treat[] class members equitably relative to each other."  Fed. R. Civ. P. 23(e)(2)(D).  Assessment of the Settlement's Plan of Allocation "'is governed by the same standards of review applicable to approval of the settlement as a whole: the plan must be fair, reasonable and adequate.'"  *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1045 (N.D. Cal. 2008).  The Plan of Allocation, developed in consultation with Lead Plaintiff's damages expert, details how the Settlement proceeds will be distributed among Authorized Claimants and provides formulas for calculating the recognized claim of each Class Member based on each such Person's purchases or acquisitions of Equinix common stock during the Class Period and if, or when, they sold.  Pfefferbaum Decl., ¶¶71-74.  It is fair, reasonable, and adequate because all eligible Class Members (including Lead Plaintiff) will be subject to the same formulas for distribution of the Settlement and each Authorized Claimant will receive his, her, or its *pro rata* share of the distribution.  *See, e.g.*, *In re BofI Holding, Inc. Sec. Litig.*, 2022 WL 9497235, at *8 (S.D. Cal. Oct. 14, 2022) ("[N]o indication that the distribution and allocation methods proposed . . . will result in unequitable treatment of Class Members" where the "Claims Administrator will determine each Authorized Claimant's share of the Net Settlement Fund based upon the information submitted in the Proof of Claim Form and based on the calculation of recognized loss, distributed on a *pro rata* basis."); *Longo*, 2022 U.S. Dist. LEXIS 158606, at *18 ("Specifically, each authorized claimant's share of the net settlement amount will be based on when

---

[9]      *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 948 (9th Cir. 2015) (finding that the settlement was not rendered unfair by the inclusion of an opt-out provision where "[o]nly the exact threshold, for practical reasons, was kept confidential").

the claimant acquired and sold the subject securities.  Accordingly, this factor also weighs in favor of final approval.").

**D.    The Remaining Ninth Circuit Factors Are Satisfied**

**1.    Discovery Completed and Stage of the Proceedings**

The Parties reached the Settlement after Lead Plaintiff obtained and analyzed over 78,000 pages of documents produced by Defendants and nonparties.  *See* Pfefferbaum Decl., ¶7.  That discovery provided significant insight into the strengths and challenges of the Litigation, and the Parties had a thorough understanding of the arguments, evidence, and potential witnesses that would inform the trial, and did inform Lead Plaintiff's positions at the mediation and when considering the Settlement.  There can be no question that Lead Plaintiff and Lead Counsel had sufficient information to evaluate the case and the merits of the Settlement by the time it was reached.  *See In re Lyft Inc. Sec. Litig.*, 2023 WL 5068504, at *8 (N.D. Cal. Aug. 7, 2023) (When the "parties settled only after conducting significant discovery and investigation into [p]laintiff's claims," counsel "entered the settlement discussions with a substantial understanding of the factual and legal issues, so as to allow them to assess the likelihood of success on the merits."); *Vataj v. Johnson*, 2021 WL 5161927, at *7 (N.D. Cal. Nov. 5, 2021) (finding "[t]his factor weighs in favor of approval" where "[t]he parties settled . . . after they had informally exchanged significant information relevant to Plaintiffs' claims").  This factor weighs in favor of final approval of the Settlement.

**2.    Lead Counsel Views This Good-Faith Settlement as Fair, Reasonable, and Adequate**

The Ninth Circuit recognizes that parties "'represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation.'"  *Rodriguez*, 563 F.3d at 967.  Thus, courts accord great weight to the recommendations and opinions of experienced counsel.  *See In re Stable Rd. Acquisition Corp.*, 2024 WL 3643393, at *9 (C.D. Cal. Apr. 23, 2024) ("'The recommendation of experienced counsel carries significant weight in the court's determination of the reasonableness of the settlement.'"); *Khoja v. Orexigen Therapeutics, Inc.*, 2021 WL 5632673, at *7 (S.D. Cal. Nov. 30, 2021) ("Given Lead Counsel's

experience with the case and expertise with securities class actions, the Court presumes reasonable Lead Counsel's recommendation to approve the Settlement.").

Lead Counsel has extensive experience representing plaintiffs in securities and other complex class action litigation, and has negotiated numerous substantial class action settlements across the country.  Robbins Geller Decl., Ex. G.  As a result of this experience, and with the assistance of sophisticated consultants when appropriate, Lead Counsel possessed a clear understanding of Lead Plaintiff's claims by the time the Settlement was reached.  Based thereon, Lead Counsel concluded that the Settlement is a very good result for the Class.  Therefore, here, "[t]here is nothing to counter the presumption that Lead Counsel's recommendation is reasonable." *Omnivision*, 559 F. Supp. 2d at 1043.

### 3.  The Positive Reaction of Class Members to the Settlement

While the deadline to object to the Settlement is December 1, 2025, to date, no objections or requests for exclusion have been received.  Should any objection or requests to be excluded from the Class be received, Lead Plaintiff will address them in its reply papers.  "'[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members.'"  *Id*.  The Class's overwhelmingly positive reaction to the Settlement to date supports final approval.  *See Impax*, 2022 WL 2789496, at *7 ("[T]he absence of objections indicates strong support among the Class Members and weighs in favor of approval.").

### 4.  The Settlement Amount

The $41.5 million Settlement is a significant result for the Class reflecting the persistent diligence applied in pursuing the claims.  The Settlement is nearly 300% greater than the $14 million median settlement amount for securities class actions in 2024.[10]  It is also nearly 400% greater than the $11.3 million median settlement amount for federal securities class actions from 2015-2023, and more than 400% greater than the median settlement amount for securities class actions in the Ninth

---

[10]   Cornerstone Report at 1, 19.

Circuit from 2015-2024.[11]  Moreover, the Settlement recovers approximately 18% of the estimated reasonably recoverable damages, and more than double the 7.5% median recovery in the Ninth Circuit during the same time period as a percentage of plaintiff-style damages.[12]

### 5.    The Risk of Maintaining Class Certification

Although at the time of the Settlement Lead Plaintiff had moved for class certification (ECF 90), it was not fully briefed and there is always the risk that the Class would not be certified.  *See Stable Rd.*, 2024 WL 3643393, at *6.  Certification of a litigation class is never guaranteed, and even if the Court certified a litigation class here, Defendants may have succeeded in convincing the Court to shorten the class period, and may later have moved to decertify the Class.  Pfefferbaum Decl., ¶¶52, 64.  Rule 23(c)(1) provides that a class certification order may be altered or amended at any time before a decision on the merits.  This factor weighs in favor of approval.

*    *    *

In sum, Lead Counsel attained an excellent result for the Class.  The Court should find that the Settlement is fair, reasonable, and adequate, and should grant final approval.

## IV.    THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION

In addition to seeking final approval of the Settlement, Lead Plaintiff seeks final approval of the Plan of Allocation.  The Plan of Allocation is considered separately from the fairness of the Settlement but is nevertheless governed by the same legal standards: the plan must be fair and reasonable.  *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1284 (9th Cir. 1992); *see also Vataj v. Johnson*, 2021 WL 1550478, at *10 (N.D. Cal. Apr. 20, 2021) ("'[C]ourts recognize that an allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel.'") (alteration in original).  As noted, the Plan of Allocation here provides an equitable basis to allocate the Net Settlement Fund among all Authorized Claimants (Class Members who submit an acceptable Proof of Claim and who have a recognized loss under the Plan of Allocation).  Individual claimants' recoveries will depend on when they bought Equinix

---

[11]    *Id*. at 1, 20.

[12]    *Id.* at 20.

common stock during the Class Period and whether and when they sold their shares. Authorized Claimants will recover their proportional "*pro rata*" amount of the Net Settlement Fund. This is the traditional and reasonable approach to allocating securities settlements. *See, e.g.*, *Mauss v. NuVasive, Inc.*, 2018 WL 6421623, at *4 (S.D. Cal. Dec. 6, 2018) ("'A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable.'"). To date, there has been no objection to the Plan of Allocation. As a result, the Plan of Allocation is fair and reasonable and should be approved.

## V.    NOTICE TO THE CLASS SATISFIES DUE PROCESS

A district court "must direct notice in a reasonable manner to all class members who would be bound by the proposal," Fed. R. Civ. P. 23(e)(1)(B), and "must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort," Fed. R. Civ. P. 23(c)(2)(B). The notice also must describe "the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Rodriguez*, 563 F.3d at 962 (citation modified). The PSLRA further requires that the settlement notice include a statement explaining a plaintiff's recovery "to allow class members to evaluate a proposed settlement." *In re Veritas Software Corp. Sec. Litig.*, 496 F.3d 962, 969 (9th Cir. 2007).

The substance of the Summary Notice and the Notice, which the Court preliminarily approved as amended, satisfies Rule 23 and due process. The Claims Administrator has emailed or mailed a total of 399,671 copies of the Court-approved Summary Notice to potential Class Members and their nominees who could be identified with reasonable effort. *See* Murray Decl., ¶11. In addition, the Summary Notice was published in *The Wall Street Journal* and transmitted over *Business Wire*. *Id.*, ¶12. The Claims Administrator also provided all information regarding the Settlement online through the Settlement Website. *Id.*, ¶14. The Notice provides the necessary information for Class Members to make an informed decision regarding the proposed Settlement, as required by the PSLRA. The Notice further explains that the Net Settlement Fund will be distributed to eligible Class Members who submit valid and timely Proofs of Claim under the Plan as described in the Notice. The notice plan here fairly apprises Class Members of their rights with respect to the

Settlement, is the best notice practicable under the circumstances, and complies with the Court's

Preliminary Approval Order, Rule 23, the PSLRA, and due process.  *See, e.g.*, *Impax*, 2022 WL

2789496, at *5-*6; *Hayes v. MagnaChip Semiconductor Corp.*, 2016 WL 6902856, at *4 (N.D. Cal.

Nov. 21, 2016).

## VI.    CONCLUSION

Lead Plaintiff and Lead Counsel achieved an outstanding settlement for the Class.  Lead

Plaintiff therefore respectfully requests that the Court approve the Settlement and Plan of Allocation.

DATED:  November 10, 2025                    Respectfully submitted,

                                            ROBBINS GELLER RUDMAN
                                              & DOWD LLP
                                            SHAWN A. WILLIAMS
                                            DANIEL J. PFEFFERBAUM
                                            HADIYA K. DESHMUKH
                                            HAILEY S. ZANUTTO


                                                   s/ Daniel J. Pfefferbaum
                                            DANIEL J. PFEFFERBAUM

                                            Post Montgomery Center
                                            One Montgomery Street, Suite 1800
                                            San Francisco, CA  94104
                                            Telephone:  415/288-4545
                                            shawnw@rgrdlaw.com
                                            dpfefferbaum@rgrdlaw.com
                                            hdeshmukh@rgrdlaw.com
                                            hzanutto@rgrdlaw.com

                                            ROBBINS GELLER RUDMAN
                                                & DOWD LLP
                                            ELLEN GUSIKOFF STEWART
                                            655 West Broadway, Suite 1900
                                            San Diego, CA  92101-8498
                                            Telephone:  619/231-1058
                                            619/231-7423 (fax)
                                            elleng@rgrdlaw.com

                                            Lead Counsel for Lead Plaintiff

                                            PITTA LLP
                                            VINCENT F. PITTA
                                            120 Broadway, 28th Floor
                                            New York, NY  10271
                                            Telephone: 212/652-3890
                                            vpitta@pittalaw.com

                                            Additional Counsel